Filed: 3/31/2021 1:25 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 51788121
By: Shailja Dixit
3/31/2021 3:09 PM

CAUSE NO. **21-CV-0426** _____



| | |
|---|---|
| JAMES ETHRIDGE, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| V. | § |
| | § |
| SAMSUNG SDI CO. LTD; | § |
| AMAZON.COM, INC.; | § |
| AMAZON.COM SERVICES, INC.; | § |
| FIREHOUSE VAPORS, LLC, and | § |
| | § |
| *Defendants*. | |

IN THE DISTRICT COURT OF

GALVESTON COUNTY, TEXAS

**Galveston County - 405th District Court**

_____ JUDICIAL DISTRICT

## Plaintiff's Original Petition

COMES NOW, James Ethridge (hereinafter "Plaintiff") who files this, his Original Petition, complaining of Defendants SAMSUNG SDI CO. LTD., a Korean corporation, AMAZON.COM, INC., a Washington corporation, AMAZCOM.COM SERVICES, INC., a Washington corporation, and FIREHOUSE VAPORS, LLC., a Texas Limited Liability Company. In support of his petition, Plaintiff respectfully shows this Court the following:

### I. Discovery Control Plan

1. Plaintiff intends to conduct discovery under Discovery Control Plan Level 3.

### II. Parties

2. Plaintiff is a resident of Kemah, Galveston County, Texas.

3. Defendant Samsung SDI Co. Ltd., (hereinafter "Samsung Korea") is a South Korean corporation with its principal place of business at Giheung Headquarters, 150-20, Gongse-ro Giheung-gu, Yongin-si, Gyeonggi-do. Upon information and belief, Samsung

573785-1

**Status Conference - 07/01/2021**



SDI Co. Ltd. at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California.

4.    Defendant Samsung Korea was and is engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing lithium-ion batteries, including the battery that is the subject of this lawsuit (the "Subject Battery").

5.    Samsung Korea does not maintain any physical presence in the United States. It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

6.    At all times material hereto, Defendant Amazon.com, Inc., (hereinafter "Amazon") was a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

7.    At all times material hereto, Defendant Amazon.com Services, Inc. (hereinafter "Amazon Fulfillment") is a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

8.    Defendant Amazon and Defendant Amazon Fulfillment will collectively be referred to as the "Amazon Defendants."

9.    Defendant Firehouse Vapors, LLC is a Texas Limited Liability Company. Firehouse Vapors, LLC may be served via its registered agent, Sam C. Grizzaffi, at 852 Davis Road, League City, Texas 77573.

10.     The instant case involves the explosion of a lithium-ion battery and the subject battery, and other similar/identical batteries, were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the Samsung Defendants and one or more distributors and/or retailers, namely the Amazon Defendants, who sell and distribute Samsung products, including the subject battery and similar batteries to consumers.

11.     The true names and capacities of the Defendants Does 1 through 50, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff at the time of filing this Complaint.  Therefore, Plaintiff sues said Defendants by sch fictitious names and will ask leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the Doe Defendants is, in some manner, responsible for the events and happenings herein and proximately caused he injuries and damages to Plaintiff as alleged in this Complaint.

12.     The defendants identified in paragraphs 3-8 are collectively referred to as "Defendants."

### III.     Jurisdiction

13.     All or a substantial part of the events or omissions giving rise to this action took place in Kemah, Galveston County, Texas.

14.     The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

15.     The Court has jurisdiction over Defendant Firehouse Vapors, LLC because it was doing business in the State of Texas and sold a defective product from which this suit arises while doing business in the State of Texas.

16.     This Court has personal jurisdiction over Defendant Samsung SDI Co. Ltd because of its purposeful, continuous, and systematic contacts with Texas entities and the Texas market, and because its products are sold in and throughout Texas.

17.     This Court has personal jurisdiction over the Amazon Defendants because of their purposeful, continuous, and systematic contacts with Texas entities and the Texas market.

## IV.     Venue

18.     Venue is proper in Galveston County under Texas Civil Practice and Remedies Code section 15.002(a)(1), because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

19.     Because Plaintiff's claims against all Defendants arise from the same occurrence or series of occurrences, venue is proper as to all Defendants under Texas Civil Practice and Remedies Code section 15.005.

## V.  Facts

Background Information on E-Cigarettes

20.     E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of vapor instead of smoke.[1]  They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at
https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf

21.     E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves.[3]  E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice" or "e-liquid," providing a physical sensation similar to tobacco smoke.

22.     Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

23.     E-cigarettes differ from traditional cigarettes in a critical way:  the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component.    While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

24.     E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical device, requiring a lithium-ion battery of a similar shape.  When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

25.     At least one death has bene reported in relation to an exploding e-cigarette.[5]

26.     In addition to the physical harm posed by e-cigarettes and their components, the e-cigarettes also pose considerable health risks.

---

[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* Fortin, J., Vape Pen Kills a Florida Man, NY Times, May 16, 2018 available at *https://www.nytimes.com/2018/05/16/us/man-killed-vape-explosion.html*.

27.     E-cigarette use exposes the lungs to a variety of chemicals, including those added to e-liquids, and other chemicals produced during the heating/vaporizing process.[6]

28.     E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[7] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[8]

29.     Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012.  Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[9]

30.     In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[10]

31.     Electronic cigarette juices come in enticing flavors such as Lucky Charms, SourPatch, Pumpkin Spice, Chocolate Ice Pop, Strawberry Solis, Guava Pop and OMG.  E-cigarette advertisements are unrestricted, appearing on television, radio and in print.

32.     E-cigarette marketing is unfettered and unregulated.  Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena.  Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and

---

[6] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[7] *Id.*
[8] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[9] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.
[10] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

have the freedom to utilize the same marketing tactics previously employed by big tobacco. Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

33.     Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[11]

34.     China, Korea, and other foreign countries are major producers of e-cigarettes and their component parts.  It was estimated that more than 300 million e-cigarettes were shipped from China to the United States and Europe in 2015.[12]  Many of these products are shipped from China and placed directly into the stream of commerce in the United States without any knowledge as to the composition, design, or safety of the products.  Most United States' distributors choose to import e-cigarettes from China because of the low cost and non-existent quality control.

35.     Federal agencies have begun to recognize the dangers posed by e-cigarettes. In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there

---

[11] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).

[12] Barboza, David, *China's E-Cigarette Boom Lacks Oversight for Safety*, New York Times, Dec. 13, 2012 available at https://www.nytimes.com/2014/12/14/business/international/chinas-e-cigarette-boom-lacks-oversight-for-safety-.html.

is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[13]

The Incident

36.     On or around November 22, 2019, Plaintiff had a lithium-ion battery in his pants pocket. Suddenly and without warning, the battery exploded and caught fire, causing Plaintiff to sustain severe burns and other injuries.

37.     Plaintiff was injured in Kemah, Texas.

38.     Plaintiff purchased his e-cigarette device from Defendant Firehouse Vapors, LLC.

39.     Plaintiff purchased the subject battery through the Amazon Defendant's marketplace on or around October 29, 2018.

40.     Upon information and belief, the lithium-ion battery that injured Plaintiff was manufactured, marketed, sold, distributed, or otherwise placed into the stream of commerce by Defendant Samsung SDI Co. Ltd.

41.     At all relevant times herein, the Defendants failed to warn Plaintiff regarding the foreseeable risks associated with the use of the e-cigarette device and batteries including, but not limited to, storing loose batteries in protective casings, using specific charging systems, and/or proper charging methods.

42.     Plaintiff used the e-cigarette device and batteries in a reasonably foreseeable manner and for their intended purposes.

---

[13] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

43.     As a result of the battery explosion and concurrent fire from the battery, Plaintiff sustained severe, permanent and life-altering injuries.  Plaintiff is left physically and emotionally scarred from the burns.

## VI.     Causes of Action

### A.  Negligence.

44.     At all relevant times, Defendants designed, manufactured, tested, inspected, distributed, assembled and sold the e-cigarette device, charger, and battery (collectively "e-cig products") that injured Plaintiff.

45.     Defendants knew, or in the exercise of due care should have known, that the e-cig products were unreasonably dangerous, and their use would create a foreseeable and unreasonable risk of harm to users, including Plaintiff.

46.     Defendants were under a duty to properly and adequately design, manufacture, assemble, import, test, inspect, label, provide adequate warnings for, package, distribute, and sell the e-cig products in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with the product, including Plaintiff.

47.     Defendants breached their duty of reasonable care owed to Plaintiff in one or more of the following ways:

   a.  Failing to design, manufacture, distribute, and sell the e-cig products in such a manner that it would not spontaneously heat up and catch fire;

   b.  Failing to design, manufacture, distribute, and sell the e-cig products in a condition that would allow it to operate as safely as a reasonable consumer would expect;

9

c.  Failing to provide reasonable and adequate warnings to suppliers, purchasers and users of the e-cig products to alert users of the dangerous conditions described herein;

d.  Failing to properly test the e-cig products;

e.  Failing to adopt and/or implement proper quality control procedures;

f.  Failing to hire employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

g.  Failing to train employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

h.  Failing to monitor employees in the proper manufacture, assembly, inspection, testing, and/or quality control procedures;

i.  Selling e-cig products that were defective, unreasonably dangerous, and unfit for consumer use; and otherwise failing to exercise ordinary care in discharging their duties as manufacturers and/or sellers of consumer products to the general public.

48.  Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

49.  Upon information and belief, and at all times herein mentioned, Defendants and each of them, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed and advertised the e-cig products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

10

50.     Defendants, and each of them, owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, inspection, distribution and sale of the e-cig products to ensure that the e-cig products were safe for their intended and/or reasonably foreseeable use.

51.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

52.     Upon information and belief, and at all times herein mentioned, Defendants and each of them, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed and advertised the e-cig products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

53.     Defendants, and each of them, owed a duty to exercise reasonable care in the design, manufacture, inspection, distribution and sale of the e-cig products to ensure that the e-cig products were safe for their intended and/or reasonably foreseeable use.

54.     Defendants, and each of them, knew or in the exercise of due care should have known that the e-cig products would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users.  Defendants were under a duty to properly and adequately instruct, warn and/or sell the e-cig products in a reasonably safe condition as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with it.

55.     Defendants, and each of them, failed to exercise the amount of care in the design, manufacture, inspection, distribution, and sale of the e-cig products, that a reasonably careful manufacturer, designer, supplier or seller would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

56.     Defendants, and each of them, knew or reasonably should have known that the e-cig products were dangerous or were likely to be dangerous when used or misused in a reasonably foreseeable manner.   Defendants, and each of them, knew or reasonably should have known that ordinary users would not realize the hazards and risks posed by the e-cig products.

57.     Upon information and belief, at the time of the incident, Plaintiff was not aware that the e-cig products presented any risk of injury to him and had not been advised or informed by anyone that the e-cig products could explode or otherwise pose a risk to his health and safety.

58.     Defendants, and each of them, failed to adequately warn purchasers, consumers and end users about the severe hazards posed by the e-cig products and/or instructed on the safe use of the e-cig products.   A reasonable manufacturer, distributor, designer, supplier or seller under the same or similar circumstances would have warned of the dangers posed or instruct on the safe use of the e-cig products.

59.     Defendants, and each of them, negligently provided incorrect and/or inadequate recommendations, advice, and instruction to Plaintiff regarding the combination and compatibility of the various e-cig products and their use.

60.     As a direct and proximate result of the aforementioned negligent conduct by Defendants, and each of them, Plaintiff suffered injuries as alleged.   The negligence of Defendants, and each of them, was a substantial factor in causing serious injuries to Plaintiff as previously alleged.

12

61.    At the time of the incident, the e-cig products were in substantially the same condition as when introduced into the stream of commerce by Defendants and were being used by Plaintiff in a reasonably foreseeable manner.

62.    For the reasons set forth above, the e-cig products were unreasonably dangerous to foreseeable users, including Plaintiff.

63.    An ordinary consumer, such as Plaintiff, would not have recognized the potential risks and dangers inherent in the e-cig products.

64.    The risk of danger in the design of the e-cig products outweighed any benefits of the design, and safer alternative designs were available at the time of manufacturer and supply.   Therefore, the e-cig products presented a substantial and unreasonable risk of serious injuries to users of said products, such as Plaintiff.

65.    As a direct and legal result of the foregoing actions or inactions of Defendants, and as a result of the defective condition of the e-cig products, Defendants were a substantial factor in causing Plaintiff to sustain serious and permanent bodily injuries including second and third degree burns, scarring, physical pain and suffering, permanent impairment and loss of function, disability, disfigurement, inconvenience, loss of enjoyment of life and emotional distress consistent with and not over and above that usually associated with the physical injuries he sustained.

66.    As a direct and legal result of the conduct of Defendants and each of them, and as a direct and legal result of the defective condition of the e-cig products, Plaintiff also incurred significant damages, including but not limited to the expense of hospitalization, expense of medical care and treatment in the past and in the future, lost earnings, lost earning

capacity, loss of ability to earn wages in the future; and has been otherwise harmed, injured and damaged.

67.     In researching, testing, designing, manufacturing, labeling, selling, distributing, advertising, promoting, marketing, servicing, and/or supplying e-cigarettes and related products, Defendants, and each of them, did so in conscious disregard for the safety of the users and consumers of said products, as well as bystanders and others who would foreseeably come into contact with said products.  Upon information and belief, Defendants, and each of them, had specific prior knowledge that there was a high risk of injury or death resulting from the use of said products.

68.     Upon information and belief, Defendants, and each of them, were aware that users of e-cigarettes and related products had no knowledge or information indicating that the e-cig products could cause serious and life-threatening injury, and Defendants knew that the users of e-cig products would assume, and in fact did assume, that the e-cig products were safe, when in fact said products posed an unreasonable hazard to human life and safety.

69.     Upon information and belief, with said knowledge, Defendants, and each of them, opted to design, manufacture, sell, label, distribute, warrant, market, service, and/or supply e-cigarettes and related products without attempting to protect users and consumers of the high risk of injury or death resulting from the use of said products.  Rather than attempting to warn and/or protect users and consumers from said hazards, Defendants, and each of them, intentionally failed to reveal their knowledge of said risks, and fraudulently, knowingly, consciously and actively concealed and suppressed said knowledge from users, consumers, and other members of the general public, including Plaintiff.

14

70.     Upon information and belief, the aforementioned conduct of Defendants, and each of them, was motivated by the financial interests of Defendants in the continuing, uninterrupted manufacture, distribution, supply and sale of said products.   In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users and consumers of said products.

71.     WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as herein set forth.

**B.  Strict Liability for Manufacturing Defect**

72.     At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, assembling, selling and/or otherwise intentionally placing e-cigarette devices, chargers, and/or batteries into the stream of commerce and directing such products to Texas, including the e-cigarette, charger, and battery that injured Plaintiff.

73.     The e-cig products were defectively manufactured. Specifically, the e-cigarette, charger, and battery deviated from its specifications in a manner that rendered the product unreasonably dangerous.

74.     The e-cig products were in the same condition at the time Plaintiff was injured as it was when it was originally placed into the stream of commerce and at the time it was ultimately sold to Plaintiff by Defendants.

75.     The defective manufacture of the e-cig products was a direct and producing cause of substantial injuries and damages to Plaintiff.

### C.  Strict Liability for Marketing Defect

76.     At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, assembling, selling and/or otherwise intentionally placing the e-cig products into the stream of commerce and directing such products to Texas, including the e-cig products that injured Plaintiff.

77.     At the time the e-cigarette device, charger, and battery in question were manufactured, marketed, distributed and sold by Defendants, the e-cig products contained an inherent risk of harm that could arise from intended or reasonably anticipated use and/or handling. Defendants knew or should have reasonably foreseen the risk of harm at the time the e-cig products were marketed. The absence of proper warnings and/or instructions rendered the e-cig products defective and unreasonably dangerous.

78.     Defendants' failure to warn and/or instruct was the direct and producing cause of substantial injuries and damages to Plaintiff.

### D.  Respondent Superior

79.     At all relevant times, all agents, servants and/or employees of Defendants were acting within the course and scope of employment and/or official duties. Furthermore, at all relevant times, all agents, servants, and/or employees of Defendants were acting in furtherance of the duties of their office and/or employment.

80.     Therefore, Defendants are responsible for all damages resulting from the negligent acts and/or omissions of its agents, servants, and/or employees pursuant to the doctrine of Respondent Superior.

**E.  Breach of Express Warranty**

81.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

82.     Defendants, and each of them, expressly warranted that the e-cig products were safe and effective for their intended and/or reasonably foreseeable use.

83.     The e-cig products, and each of them, failed to conform to these express warranties as they caused and continue to cause serious injury to the health and safety of users and bystanders when used as intended and/or in a reasonably foreseeable manner.

84.     Plaintiff, as an ordinary consumer, relied on the express warranties by Defendants, and each of them, in using the e-cig products.

85.     As a direct and proximate result of the breach of express warranties by Defendants, and each of them, Plaintiff suffered injuries as previously alleged.  The breach of express warranties by Defendants, and each of them, was a substantial factor in causing the injuries to Plaintiff as previously alleged.

**F.  Breach of Implied Warranty**

86.     Plaintiffs repeat and re-allege all preceding paragraphs as if set forth fully herein.

87.     Defendants are engaged in the business of designing, manufacturing, marketing, distributing, assembling, and/or selling e-cig products to the public, including the e-cigarette device, charger, and battery that injured Plaintiff.

88.     Defendants warranted that the e-cig products which injured Plaintiff as good and fit for the ordinary purpose for which such e-cig products are used. The e-cigarette

device, charger, and battery were not fit for such purposes. Defendants, therefore, breached the implied warranty of merchantability.

89.     In Texas, the implied warranty of merchantability is extended to any person who may be reasonably expected to use, consumer, or be affected by the goods.

90.     The unmerchantability of the e-cig products directly and proximately caused Plaintiff substantial injuries and damages.

**G. Gross Negligence**

91.     Defendants committed acts of omissions and commission, as listed above, which collectively and severally constituted gross negligence, and that gross negligence proximately caused Plaintiff's injuries and damages for which Plaintiff is entitled to recover punitive damages.

92.     When viewed objectively, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others. Defendants knew of this extreme risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiffs.

**VII.   Damages**

93.     Defendants' conduct as described herein was the direct and producing cause of serious injuries and damages to Plaintiff. Plaintiff therefore seeks recovery for damages suffered as a result of Defendants' conduct, including all remedies allowed at law, general and special, including but not limited to the following elements of damages:

      a.   Medical care expenses in the past and future;

      b.   Physical pain in the past and future;

      c.   Mental anguish in the past and future;

    d.  Physical impairment in the past and future;

    e.  Disfigurement in the past and future; and

    f.  Loss of earning capacity in the past and future.

94.    Plaintiff is also entitled to punitive damages due to the conduct and gross negligence described herein.

95.    The amount of damages that would fairly and reasonably compensate Plaintiff for his injuries is to be properly determined by a jury after consideration of all the evidence presented at trial. However, in satisfaction of the requirements imposed by Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that he seeks monetary relief over $1,000,000.00. Plaintiff specifically reserves the right, provided by the Texas Rules of Civil Procedure, to amend and/or supplement this pleading.

## VIII.   Jury Trial Requested

96.    Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff asserts his request for a jury trial. A jury fee has been paid to the Galveston County District Clerk.

## IX.   Conditions Precedent

97.    All conditions precedent to Plaintiff's right to recover and to Defendants' liability have been performed or have occurred.

98.    Nothing Plaintiff did caused or contributed to this occurrence.

## X.   Requests for Disclosure

99.    Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that Defendants disclose within fifty (50) days of service of this request, the information or material described in the Texas Rules of Civil Procedure 194.2.

### XI. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants be ordered to pay all of Plaintiff's actual damages, exemplary damages, statutory damages and penalties, attorneys' fees, costs of court, pre- and post-judgment interest at the maximum rate allowed by law, and that Plaintiff be granted such other and further relief to which they may be entitled at law or in equity.

Respectfully submitted,

**Eiland & Bonnin, PC**
**LEVIN SIMES ABRAMS, LLP**

By: _____

A Craig Eiland
TX Bar No. 06502380
Eiland & Bonnin, PC
2200 Market Street, Suite 501
Galveston, TX 77550
Telephone: (409) 763-3260
Facsimile: (713) 513-5211
CEiland@eilandlaw.com

Angela J. Nehmens
*To Be Admitted Pro Hac Vice*
Levin Simes Abrams LLP
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
anehmens@levinsimes.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was delivered to all counsel of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, via electronic delivery for those counsel available through the e-filing system on March 31, 2021.

A. Craig Eiland

Filed: 4/28/2021 10:36 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 52899205
By: Shailja Dixit
4/28/2021 10:44 AM

CAUSE NO. 21-CV-0426

| | | |
|---|---|---|
| JAMES ETHRIDGE, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| SAMSUNG SDI CO. LTD; | § | |
| AMAZON.COM, INC.; | § | |
| AMAZON.COM SERVICES, INC.; | § | |
| FIREHOUSE VAPORS, LLC., and | § | |
| | § | |
| *Defendants.* | § | 405th JUDICIAL DISTRICT |

---

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

AMAZON.COM INC. and AMAZON.COM SERVICES, INC. (collectively "Amazon"), Defendants in the above entitled and numbered cause, file this Original Answer ("Answer") to Plaintiff's Original Petition in the above entitled and numbered cause, and for such Answer would show unto the Court the following:

### I.
### GENERAL DENIAL

Pursuant to Texas Rules of Civil Procedure Rule 92, Amazon denies each and every, all and singular the allegations contained in Plaintiff's Original Petition and says the same are not true in whole or in part. Amazon demands strict proof thereof, and of this general denial, prays Judgment of the Court.

### II.
### NOTICE TO USE DOCUMENTS

Pursuant to Texas Rules of Civil Procedure Rule 193.7, Amazon gives notice that it may use documents produced by Plaintiff in response to written discovery at any pretrial proceeding in this case, as well as at trial.

**EXHIBIT**
**B-2**

## III.
## REQUEST FOR DISCLOSURE

Pursuant to Texas Rules of Civil Procedure Rule 194, Amazon requests that Plaintiff disclose the information or material described in Rule 194.2.

WHEREFORE, PREMISES CONSIDERED, Amazon prays that upon final hearing hereof, Plaintiff take nothing by reason of this suit and that Amazon goes hence without delay, and for such other and further relief, both general and special, legal and equitable, to which it may be justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**
Dallas | Houston | Austin

By: _____
Clifford L. Harrison
State Bar No. 09113800
charrison@munsch.com
Heriberto Montalvo
State Bar No.
hmontalvo@munsch.com
700 Milam, 27th Floor
Houston, Texas 77002
(713) 222-4035 Telephone
(713) 222-1475 Facsimile

ATTORNEYS FOR DEFENDANTS,
AMAZON.COM, INC. AND
AMAZON.COM SERVICES, INC.

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 28th day of April, 2021, a true and correct copy of the foregoing instrument was served upon all counsel of record, pursuant to the Texas Rules of Civil Procedure, by electronic e-service, fax or certified mail, as follows:


A. Craig Eiland
**Eiland & Bonnin, PC**
2200 Market Street, Suite 501
Galveston, TX 77550
*ATTORNEYS FOR PLAINTIFF*

Angela J. Nehmens
*To Be Admitted Pro Hac Vice*
**Levin Simes Abrams LLP**
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
*ATTORNEYS FOR PLAINTIFF*


_____
*CLIFFORD L. HARRISON*

Filed: 4/29/2021 2:21 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 52957267
By: Shailja Dixit
4/29/2021 2:29 PM

## CAUSE NO. 21-CV-0426

| | | |
|---|---|---|
| **JAMES ETHRIDGE** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS.** | § | |
| | § | |
| **SAMSUNG SDI CO. LTD;** | § | **GALVESTON COUNTY, TEXAS** |
| **AMAZON.COM, INC.;** | § | |
| **AMAZON.COM SERVICES, INC.;** | § | |
| **FIREHOUSE VAPORS, LLC** | § | **405TH JUDICIAL DISTRICT** |

## DEFENDANT FIREHOUSE VAPORS, LLC'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **FIREHOUSE VAPORS, LLC**, Defendant herein, and in answer to Plaintiff's Original Petition, makes and files this Defendant's Original Answer, respectfully showing unto the Court the following:

### I.

### GENERAL DENIAL

At this time Defendant asserts a General Denial as authorized by Rule 92 of the Texas Rules of Civil Procedure, and respectfully request that the Court and Jury require the Plaintiff to prove Plaintiff's claims, charges and allegations by a preponderance of the evidence as required by the Constitution and the laws of the State of Texas.

### II.

### RIGHT TO AMEND

Defendant would further reserve the right to amend this pleading as discovery progresses.

### III.

### DESIGNATED E-SERVICE EMAIL ADDRESS

The following is the undersigned attorneys' designation of e-Service email address for all


EXHIBIT
**B-3**

e-served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21a:

**e-service@msc-lawyer.com.**  This is the undersigned's ONLY e-Service email address, and service

through any other email address will be considered invalid.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing

by Plaintiff's suit against your said Defendant, that Defendant be discharged, and for such other and

further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

MILLER, SCAMARDI & CARRABBA, P.C.

BY:   /s/ Luke C. Carrabba
Luke C. Carrabba
SBN:  03869050
6525 Washington Avenue
Houston, Texas 77007-2112
TEL: (713) 861-3595
FAX: (713) 861-3596
E-SERVICE:  e-service@msc-lawyer.com
**ATTORNEYS FOR DEFENDANT,
FIREHOUSE VAPORS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via certified mail, return receipt requested and/or facsimile, pursuant to Rule 21a, Tex. R. Civ. P., on this 29th day of April, 2021.

/s/ Luke C. Carrabba
Luke C. Carrabba

Filed: 5/28/2021 1:59 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 53928183
By: Rolande Kain
5/28/2021 2:24 PM

**CAUSE NO. 21-CV-0426**

| | | |
|---|---|---|
| **JAMES ETHRIDGE** | § | **IN THE DISTRICT COURT** |
| | § | |
| **VS.** | § | |
| | § | |
| **SAMSUNG SDI CO. LTD;** | § | **GALVESTON COUNTY, TEXAS** |
| **AMAZON.COM, INC.;** | § | |
| **AMAZON.COM SERVICES, INC.;** | § | |
| **FIREHOUSE VAPORS, LLC** | § | **405TH JUDICIAL DISTRICT** |

**DEFENDANT FIREHOUSE VAPORS, LLC'S  VERIFIED AMENDED ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **FIREHOUSE VAPORS, LLC**, Defendant herein, makes and files this Defendant Firehouse Vapors, LLC's Verified Amended Answer, respectfully showing unto the Court the following:

**I.**

**GENERAL DENIAL**

At this time Defendant asserts a General Denial as authorized by Rule 92 of the Texas Rules of Civil Procedure, and respectfully request that the Court and Jury require the Plaintiff to prove Plaintiff's claims, charges and allegations by a preponderance of the evidence as required by the Constitution and the laws of the State of Texas.

**II.**

**VERIFIED DENIAL UNDER TRCP RULE 93**

Per TRCP Rule 93 (10), Defendant denies that it has any account or contractual relationship with Plaintiff, James Ethridge.  Such an account or contractual relationship is necessary for the foundation of any claim by Plaintiff for breach of warranty against Defendant Firehouse Vapors, LLC.



**EXHIBIT B-4**

## III.

## CONTRIBUTION AND INDEMNITY

Defendant further asserts, although it disputes any transaction or liability with Plaintiff, to the extent Defendant has any liability that liability rightfully belongs to the other Defendants sued by Plaintiff in relation to the battery, the battery's marketing and the battery's alleged defects, none of which apply to Defendant Firehouse Vapors, LLC.

## IV.

## CONTRIBUTORY NEGLIGENCE OF THE PLAINTIFF

For further and special answer herein, if such be necessary, and in the alternative, this Defendant avers that such injuries and damages as Plaintiff may have sustained were proximately caused by the failure of the Plaintiff to exercise that degree of care which would have been exercised by persons of ordinary prudence in the exercise of ordinary care under the same or similar circumstance.

## V.

## ACT OR OMISSION OF THIRD PARTY

In the further alternative, if such be necessary, this Defendant avers that the sole proximate cause or a proximate cause of the occurrence made the basis of Plaintiff's suit was an act or omission of some third person or the condition of some instrumentality over which this Defendant has or exercised no control and for which this Defendant is not in law responsible.

## VI.

## RIGHT TO AMEND

Defendant would further reserve the right to amend this pleading as discovery progresses.

## VII.

## DESIGNATED E-SERVICE EMAIL ADDRESS

The following is the undersigned attorneys' designation of e-Service email address for all e-served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21a: **e-service@msc-lawyer.com.** This is the undersigned's ONLY e-Service email address, and service through any other email address will be considered invalid.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing by Plaintiff's suit against your said Defendant, that Defendant be discharged, and for such other and further relief, both general and special, at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

MILLER, SCAMARDI & CARRABBA, P.C.

BY: _____

Luke C. Carrabba
SBN:  03869050
6525 Washington Avenue
Houston, Texas 77007-2112
TEL: (713) 861-3595
FAX: (713) 861-3596
E-SERVICE:  e-service@msc-lawyer.com
**ATTORNEYS FOR DEFENDANT,
FIREHOUSE VAPORS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon all counsel of record via certified mail, return receipt requested and/or facsimile, pursuant to Rule 21a, Tex. R. Civ. P., on this 28th day of May, 2021.

_____
Luke C. Carrabba

## **VERIFICATION**

THE STATE OF TEXAS        §
                                            §

COUNTY OF GALVESTON      §

        BEFORE ME, the undersigned authority, on this day personally appeared Sam C. Grizzaffi, who, being by me duly sworn on oath, states the following:

1. "I am the owner and operator of Firehouse Vapors, LLC.

2. I am over the age of 18 years of age, competent to testify, and have personal knowledge of the matters stated herein, each of which are true and correct.

3. I have read Firehouse Vapors, LLC's First Amended Answer, Paragraph II.

4. The facts stated therein are within my personal knowledge and are true and correct."

                                            SAM C. GRIZZAFFI

        SUBSCRIBED AND SWORN TO before me on me on this the _28_ day of May 2021 to certify which witness my hand and seal of office.

                                          Notary Public in and for
                                          The State of T E X A S

LINDA ANN WILKERSON
Notary Public, State of Texas
Comm. Expires 11-09-2022
Notary ID 11322525

Filed: 6/30/2021 9:26 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 54916965
By: Shailja Dixit
6/30/2021 9:32 AM

CAUSE NO. 21-CV-0426

| | | |
|---|---|---|
| JAMES ETHRIDGE, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | |
| | § | |
| SAMSUNG SDI CO. LTD; | § | GALVESTON COUNTY, TEXAS |
| AMAZON.COM, INC.; | § | |
| AMAZON.COM SERVICES, | § | |
| INC.; FIREHOUSE VAPORS, | § | |
| LLC; MACROMALL LLC; and | § | |
| DOES 1-50, | § | |
| | § | |
| *Defendants*. | § | 405TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

COMES NOW, James Ethridge (hereinafter "Plaintiff") who files this, his First Amended Petition, complaining of Defendants SAMSUNG SDI CO. LTD., a Korean corporation, AMAZON.COM, INC., a Washington corporation, AMAZCOM.COM SERVICES, INC., a Washington corporation, FIREHOUSE VAPORS, LLC, a Texas Limited Liability Company, and MACROMALL, LLC, a Wyoming Limited Liability Company. In support of his petition, Plaintiff respectfully shows this Court the following:

### I.    Discovery Control Plan

1.    Plaintiff intends to conduct discovery under Discovery Control Plan Level 3.

### II.    Parties

2.    Plaintiff is a resident of Kemah, Galveston County, Texas.

573785-1



3.     Defendant Samsung SDI Co. Ltd., (hereinafter "Samsung Korea") is a South Korean corporation with its principal place of business at Giheung Headquarters, 150-20, Gongse-ro Giheung-gu, Yongin-si, Gyeonggi-do.  Upon information and belief, Samsung SDI Co. Ltd. at all times relevant was, authorized to do business in the State of California and was and is engaged in substantial comings and business activities in California.

4.     Defendant Samsung Korea was and is engaged in the business of manufacturing, marketing, testing, promoting, selling, and/or distributing lithium-ion batteries, including the battery that is the subject of this lawsuit (the "Subject Battery").

5.     Samsung Korea does not maintain any physical presence in the United States.  It has a network of wholly owned subsidiaries in and throughout the United States that work together to sell various products nationwide.

6.     At all times material hereto, Defendant Amazon.com, Inc., (hereinafter "Amazon") was a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

7.     At all times material hereto, Defendant Amazon.com Services, Inc. (hereinafter "Amazon Fulfillment") is a Washington Corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington.  Its registered agent for service is Corporation Service Company

2

located at 300 Deschutes Way Southwest Suite 304 Tumwater, Washington 98501.

8.      Defendant Amazon and Defendant Amazon Fulfillment will collectively be referred to as the "Amazon Defendants."

9.      Defendant Firehouse Vapors, LLC is a Texas Limited Liability Company.  Firehouse Vapors, LLC may be served via its registered agent, Sam C. Grizzaffi, at 852 Davis Road, League City, Texas 77573.

10.     Defendant Macromall, LLC is a Wyoming Limited Liability Company.  Macromall LLC may be served via its registered agent, Registered Agents, Inc., 30 North Gould Street, Suite 2, Sheridan, Wyoming 82801.

11.     The instant case involves the explosion of a lithium-ion battery used in conjunction with an e-cigarette vaping device.  The subject battery, and other similar/identical batteries, were advertised, marketed, sold, distributed, and placed into the stream of commerce through the engagement of the Samsung Defendants and one or more distributors and/or retailers, namely the Amazon Defendants and MacroMall LLC, who sell and distribute Samsung products, including the subject battery and similar batteries to consumers.

12.     The e-cigarette vaping devices, and other similar devices, were advertised, marketed, sand sold by Firehouse Vapors, LLC.  Firehouse Vapors, LLC is an e-cigarette retail store, specializing in the sale of e-cigarettes and component parts (including but not limited to batteries, e-cigarette juice, and coils).

13.     The true names and capacities of the Defendants Does 1 through 50, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff at the time of filing this Complaint.   Therefore, Plaintiff sues said Defendants by such fictious names and will ask leave of Court to amend this Petition to show their true names or capacities when the same have been ascertained.   Plaintiff is informed and believes, and thereon alleges, that each of the Doe Defendants is, in some manner, responsible for the events and happenings herein and proximately caused he injuries and damages to Plaintiff as alleged in this Petition.

14.     The defendants identified in paragraphs 3-10 are collectively referred to as "Defendants."

### III.   Jurisdiction

15.     All or a substantial part of the events or omissions giving rise to this action took place in Kemah, Galveston County, Texas.

16.     The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

17.     The Court has jurisdiction over Defendant Firehouse Vapors, LLC because it was doing business in the State of Texas and sold a defective product from which this suit arises while doing business in the State of Texas.

18.     This Court has personal jurisdiction over Defendant Samsung SDI Co. Ltd because of its purposeful, continuous, and systematic contacts with

Texas entities and the Texas market, and because its products are sold in and throughout Texas.

19.     This Court has personal jurisdiction over the Amazon Defendants because of their purposeful, continuous, and systematic contacts with Texas entities and the Texas market, and Texas consumers.

20.     This Court has personal jurisdiction over Defendant Macromall, LLC because of its purposeful, continuous, and systematic contacts with Texas entities, the Texas market, and Texas consumers.

## IV.   Venue

21.     Venue is proper in Galveston County under Texas Civil Practice and Remedies Code section 15.002(a)(1), because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

22.     Because Plaintiff's claims against all Defendants arise from the same occurrence or series of occurrences, venue is proper as to all Defendants under Texas Civil Practice and Remedies Code section 15.005.

## V.  Facts

Background Information on E-Cigarettes

23.     E-cigarettes, also known as e-cigs, vapes, vape pens, and mods (customizable, more powerful vaporizers) are battery operated devices that deliver nicotine through flavoring and other chemicals to users in the form of

5

vapor instead of smoke.[1]   They were first patented in 2003 and have been available for sale in the United States since 2007.[2]

24.    E-cigarettes are designed to simulate the act of smoking traditional tobacco, allegedly with less of the toxic chemicals produced by the burning of tobacco leaves.[3]   E-cigarettes offer doses of nicotine with a vaporized solution, often referred to as "juice" or "e-liquid," providing a physical sensation similar to tobacco smoke.

25.    Generally, electronic cigarettes operate the same way regardless of the model in that they typically consist of at least three (3) component parts: a tank, a battery that works to heat the juices or e-liquid contained in the tank, and an atomizer that converts the liquid into vapor that the user inhales.

26.    E-cigarettes differ from traditional cigarettes in a critical way:  the e-cigarette is battery-operated and uses a heating element to produce vapor, and the traditional cigarette has no electronic component.   While both products may produce a similar physical sensation, e-cigarettes pose an additional danger - the battery-powered heating element, as well as the battery itself - that can and have caused explosions, fires, and serious injury.

27.    E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often designed as a cylindrical

---

[1] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.
[2] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf
[3] *See generally*, *Electronic Cigarettes*, National Institute on Drug Abuse, Rev. March 2018, available at https://www.drugabuse.gov/publications/drugfacts/electronic-cigarettes-e-cigarettes.

device, requiring a lithium-ion battery of a similar shape.  When the device malfunctions or fails, the battery can be shot out like a bullet or rocket.[4]

28.    At least one death has bene reported in relation to an exploding e-cigarette.[5]

29.    In addition to the physical harm posed by e-cigarettes and their components, the e-cigarettes also pose considerable health risks.

30.    E-cigarette use exposes the lungs to a variety of chemicals, including those added to e-liquids, and other chemicals produced during the heating/vaporizing process.[6]

31.    E-cigarettes have become increasingly popular. They have been marketed as smoking-cessation aids[7] and as a healthier alternative to traditional tobacco cigarettes. The selection of products has grown at an extremely rapid rate.[8]

32.    Since their introduction into the United States, sales have risen dramatically from approximately $20 million in 2008 to $2.5 billion in 2012. Industry experts predict the e-cigarette industry will become an $85 billion business within a decade and surpass the tobacco industry.[9]

---

[4] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[5] *See* Fortin, J., Vape Pen Kills a Florida Man, NY Times, May 16, 2018 available at *https://www.nytimes.com/2018/05/16/us/man-killed-vape-explosion.html*.
[6] United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2012, at p. 5.
[7] *Id.*
[8] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.
[9] Clarke, T., *Reports of E-Cigarette Injury Jump Amid Rising Popularity, United States Data Show*, Reuters.com, April 17, 2012.

33.     In January 2014, there were 466 brands of e-cigarettes and over 7,000 unique e-cigarette juice flavors available for sale.[10]

34.     Electronic cigarette juices come in enticing flavors such as Lucky Charms, SourPatch, Pumpkin Spice, Chocolate Ice Pop, Strawberry Solis, Guava Pop and OMG.  E-cigarette advertisements are unrestricted, appearing on television, radio and in print.

35.     E-cigarette marketing is unfettered and unregulated.  Whereas tobacco advertisements have been banned on radio and television for more than 40 years, no such restrictions have been instituted in the e-cigarette arena. Manufacturers, distributors, and sellers of e-cigarettes therefore reach a broader consumer base than the tobacco industry and have the freedom to utilize the same marketing tactics previously employed by big tobacco.  Namely, to tout the supposed health benefits of their products absent scientific and medical data to support such claims; to portray e-cigarette smoking as a harmless pastime on TV, radio, and in print; capitalize on individuals already addicted to nicotine; and/or encourage nicotine newcomers (mainly youths and young adults) to pick up the habit.

---

[10] Zhu, S. H., Sun, J. Y., Bonnevie, E., Cummins, S., Gamst, A., Yin, L., & Lee, M. (2014). Four hundred and sixty brands of e-cigarettes and counting: Implications for product regulation. Tobacco Control Act 2014, 23: iii3-iii9.

36.     Despite advertisements that represent e-cigarettes as a healthier alternative to traditional cigarettes, various articles have concluded that the long-lasting effects of smoking e-cigarette devices are unknown.[11]

37.     China, Korea, and other foreign countries are major producers of e-cigarettes and their component parts.  It was estimated that more than 300 million e-cigarettes were shipped from China to the United States and Europe in 2015.[12]  Many of these products are shipped from China and placed directly into the stream of commerce in the United States without any knowledge as to the composition, design, or safety of the products.  Most United States' distributors choose to import e-cigarettes from China because of the low cost and non-existent quality control.

38.     Federal agencies have begun to recognize the dangers posed by e-cigarettes.  In 2017, the United States Fire Administration characterized the "combination of an electronic cigarette and a lithium-ion battery" as a "new and unique hazard" because there is "no analogy among consumer products to the risk of a severe, acute injury presented by an e-cigarette."[13]

The Incident

---

[11] *See e.g.* National Academies of Sciences, Engineering, and Medicine, *Public Health Consequences of E-Cigarettes*, Washington, DC: The National Academies Press, 2018 (characterizing the use of e-cigarettes on public health as "unknown" and conclusively determining e-cigarette smokers are exposed to potentially toxic substances in addition to nicotine).

[12] Barboza, David, *China's E-Cigarette Boom Lacks Oversight for Safety*, New York Times, Dec. 13, 2012 available at https://www.nytimes.com/2014/12/14/business/international/chinas-e-cigarette-boom-lacks-oversight-for-safety-.html.

[13] McKenna, L., *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, U.S. Fire administration, July 2017.

39.     On or around November 22, 2019, Plaintiff had a lithium-ion battery his left pants pocket. Plaintiff was at a Shell station in League City, Texas when suddenly and without warning, the battery exploded and caught fire, causing Plaintiff to sustain severe burns and other injuries.

40.     Plaintiff purchased his e-cigarette device from Defendant Firehouse Vapors, LLC.

41.     Plaintiff purchased the subject battery through the Amazon Defendant's marketplace on or around October 29, 2018.  Macromall, LLC is listed as a third-party seller for whom the Amazon Defendants not only provide not only a platform for sale, but also control and regulate the items Macromall, LLC could advertise on the Amazon platform.  Amazon also provides Macromall, LLC and other third-party sellers with information on how best to market and advertise their products via the Amazon platform to garner customer engagement and purchases.

42.     Upon information and belief, the lithium-ion battery that injured Plaintiff was manufactured, sold, distributed, or otherwise placed into the stream of commerce by Defendant Samsung SDI Co. Ltd.  The Amazon Defendants and Macromall, LLC then marketed said battery via the Amazon platform to Plaintiff, a Texas resident and consumer.

43.     Firehouse Vapors, LLC sold the subject e-cigarette to Plaintiff without warning or instruction regarding the dangers associated with using lithium-ion 18650 batteries with e-cigarettes.  As a specialty retail store,

10

Firehouse Vapors, LLC had or should have had heightened knowledge not accessible to ordinary consumers regarding the dangers posed by the use of lithium-ion 18650 batteries with e-cigarettes.  Firehouse Vapors was therefore duty bound to inform customers of the risk of using lithium-ion 18650 batteries with e-cigarettes, including the fact that use of lithium-ion 18650 batteries with e-cigarettes, and/or carrying lithium-ion batteries to be used with e-cigarettes in pockets, posed a substantial risk of explosion.

44.    Firehouse Vapors, LLC was also duty bound to instruct its customers that the batteries used to power e-cigarettes should be kept in a protective case, and not be carried in pockets, purses, etc.

45.    As early as October 2014, reports were published by the United States Fire Administration[14] discussing the risks posed by use of lithium-ion 18650 batteries in the e-cigarette context.  The report stated lithium-ion battery use with e-cigarettes is particularly dangerous, because "the battery is installed in a cylindrical device that has its weakest (structural) point at the ends."  The report goes on to contrast lithium-ion battery use in "laptop computers and portable tools" where the batteries are contained in "rigid plastic cases that are generally strong enough to prevent" a battery from failing.

46.    The report concluded that use of "[e]-cigarettes are increasingly common; sales are growing rapidly" and that "lithium-ion batteries used to

---

[14] *See* U.S. Fire Administration Report, *Electronic Cigarette Fires and Explosions*, October 2014, available at https://www.faa.gov/hazmat/resources/lithium_batteries/media/US_Fire_Admin_Oct_2014_E_Cig_Fire_Expl_Report.pdf.

power these devices can fail."   The report further concluded "[i]t is reasonable to expect that a number of battery failure incidents will increase as the number of lithium-ion batteries use continues to grow."

47.   The United States Fire Administration issued a supplemental report in July of 2017[15] wherein the issue of spare batteries is addressed. Specifically, the report stated "e-cigarette/lithium-ion battery combination presents a new and unique hazard to consumers.  No other consumer product places a battery with a known explosion hazard such as this in such close proximity to the human body.  It is this intimate contact between the body and the battery that is…responsible for the severity of injuries that have been seen." The report went on to state that "[m]any vape shops sell plastic cases to store and carry the spare batteries; these are intended to prevent a battery short-circuit (and the ensuing explosion) if the terminals of the battery come into contact with keys or spare change in a pocket.  As noted above, the device or battery in a pocket was the leading status of the e-cigarette at the time of incident." The report concluded "lithium-ion batteries should not be used in e-cigarettes."

48.   Based on these publicly available reports, all Defendants, including the Firehouse Vapors, were duty bound to inform Plaintiff of the risk of explosion, how to safely transport spare batteries, the fact that batteries can explode, that the batteries should not be used with e-cigarettes, and/or provide

---

[15] *See* U.S. Fire Administration Report, *Electronic Cigarette Fires and Explosions in the United States 2009-2016*, July 2017 available at https://www.usfa.fema.gov/downloads/pdf/publications/electronic_cigarettes.pdf.

warnings of the same.  Firehouse Vapors failed to provide Plaintiff with any of the aforementioned information and warnings.  The Amazon Defendants, Macromall, and Samsung similarly failed to provide said information and warnings to Plaintiff.

49.     Given Firehouse Vapors status as an e-cigarette specialty store, it was also duty bound to have heightened knowledge regarding the risks posed by the products it sells, to keep its company and employees informed as to the risks posed by e-cigarettes when used in conjunction with lithium-ion 18650 batteries, and to inform its customers of the same.  Firehouse Vapors failed to institute any of these measures.

50.     As the United States Firearms Administration warned, "[a]s long as lithium-ion batteries continue to be used in e-cigarettes, severe injuries will continue to occur" and that "suppliers" (an umbrella under which all Defendants named herein fall under), should "all stress the importance of using UL-listed devices."  None of the Defendants named herein did so.

51.     At all relevant times herein, the Defendants failed to warn Plaintiff regarding the foreseeable risks associated with the use of the e-cigarette device and batteries including, but not limited to, storing loose batteries in protective casings, using specific charging systems, and/or proper charging methods.

52.     Plaintiff used the e-cigarette device and batteries in a reasonably foreseeable manner and for their intended purposes.

53.     As a result of the battery explosion and concurrent fire from the battery, Plaintiff sustained severe, permanent, and life-altering injuries requiring a six-day hospital stay and skin grafting.  Plaintiff is left physically and emotionally scarred from the burns.

## VI.     Causes of Action

### A.  Negligence As to All Defendants

54.     At all relevant times, Defendants designed, manufactured, tested, inspected, distributed, assembled and sold the e-cigarette device, charger, and/or battery (collectively "e-cig products") that injured Plaintiff.

55.     Defendants knew, or in the exercise of due care should have known, that the e-cig products were unreasonably dangerous, and their use would create a foreseeable and unreasonable risk of harm to users, including Plaintiff.

56.     Defendants were under a duty to properly and adequately design, manufacture, assemble, import, test, inspect, label, provide adequate warnings for, package, distribute, and sell the e-cig products in a reasonably safe condition so as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with the product, including Plaintiff.

57.     Defendants breached their duty of reasonable care owed to Plaintiff in one or more of the following ways:

a.  Failing to design, manufacture, distribute, and sell the e-cig products in such a manner that it would not spontaneously heat up and catch fire;

b.  Failing to design, manufacture, distribute, and sell the e-cig products in a condition that would allow it to operate as safely as a reasonable consumer would expect;

c.  Failing to provide reasonable and adequate warnings to suppliers, purchasers and users of the e-cig products to alert users of the dangerous conditions described herein;

d.  Failing to properly test the e-cig products;

e.  Failing to adopt and/or implement proper quality control procedures;

f.  Failing to hire employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

g.  Failing to train employees capable of proper manufacture, assembly, inspection, testing, and/or quality control procedures;

h.  Failing to monitor employees in the proper manufacture, assembly, inspection, testing, and/or quality control procedures;

i.  Selling e-cig products that were defective, unreasonably dangerous, and unfit for consumer use; and otherwise failing to exercise ordinary care in discharging their duties as

15

manufacturers and/or sellers of consumer products to the general public.

58.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

59.     Upon information and belief, and at all times herein mentioned, Defendants and each of them, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed and advertised the e-cig products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

60.     Defendants, and each of them, owed a duty to Plaintiff to exercise reasonable care in the design, manufacture, inspection, distribution and sale of the e-cig products to ensure that the e-cig products were safe for their intended and/or reasonably foreseeable use.

61.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

62.     Upon information and belief, and at all times herein mentioned, Defendants and each of them, negligently, recklessly and carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed and advertised the e-cig products such that they were dangerous and unsafe for their intended and/or reasonably foreseeable use.

63.     Defendants, and each of them, owed a duty to exercise reasonable care in the design, manufacture, inspection, distribution and sale of the e-cig

products to ensure that the e-cig products were safe for their intended and/or reasonably foreseeable use.

64.    Defendants, and each of them, knew or in the exercise of due care should have known that the e-cig products would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users.   Defendants were under a duty to properly and adequately instruct, warn and/or sell the e-cig products in a reasonably safe condition as not to present a danger to members of the general public who reasonably and expectedly, under ordinary circumstances, would come into contact with it.

65.    Defendants, and each of them, failed to exercise the amount of care in the design, manufacture, inspection, distribution, and sale of the e-cig products, that a reasonably careful manufacturer, designer, supplier or seller would have used in similar circumstances to avoid exposing others to a foreseeable risk of harm.

66.    Defendants, and each of them, knew or reasonably should have known that the e-cig products were dangerous or were likely to be dangerous when used or misused in a reasonably foreseeable manner.   Defendants, and each of them, knew or reasonably should have known that ordinary users would not realize the hazards and risks posed by the e-cig products.

67.    Upon information and belief, at the time of the incident, Plaintiff was not aware that the e-cig products presented any risk of injury to him and

had not been advised or informed by anyone that the e-cig products could explode or otherwise pose a risk to his health and safety.

68.     Defendants, and each of them, failed to adequately warn purchasers, consumers and end users about the severe hazards posed by the e-cig products and/or instructed on the safe use of the e-cig products.   A reasonable manufacturer, distributor, designer, supplier or seller under the same or similar circumstances would have warned of the dangers posed or instruct on the safe use of the e-cig products.

69.     Defendants, and each of them, negligently provided incorrect and/or inadequate recommendations, advice, and instruction to Plaintiff regarding the combination and compatibility of the various e-cig products and their use.

70.     As a direct and proximate result of the aforementioned negligent conduct by Defendants, and each of them, Plaintiff suffered injuries as alleged. The negligence of Defendants, and each of them, was a substantial factor in causing serious injuries to Plaintiff as previously alleged.

71.     At the time of the incident, the e-cig products were in substantially the same condition as when introduced into the stream of commerce by Defendants and were being used by Plaintiff in a reasonably foreseeable manner.

72.     For the reasons set forth above, the e-cig products were unreasonably dangerous to foreseeable users, including Plaintiff.

73.     An ordinary consumer, such as Plaintiff, would not have recognized the potential risks and dangers inherent in the e-cig products.

74.     The risk of danger in the design of the e-cig products outweighed any benefits of the design, and safer alternative designs were available at the time of manufacturer and supply.   Therefore, the e-cig products presented a substantial and unreasonable risk of serious injuries to users of said products, such as Plaintiff.

75.     As a direct and legal result of the foregoing actions or inactions of Defendants, and as a result of the defective condition of the e-cig products, Defendants were a substantial factor in causing Plaintiff to sustain serious and permanent bodily injuries including second and third degree burns, scarring, physical pain and suffering, permanent impairment and loss of function, disability, disfigurement, inconvenience, loss of enjoyment of life and emotional distress consistent with and not over and above that usually associated with the physical injuries he sustained.

76.     As a direct and legal result of the conduct of Defendants and each of them, and as a direct and legal result of the defective condition of the e-cig products, Plaintiff also incurred significant damages, including but not limited to the expense of hospitalization, expense of medical care and treatment in the past and in the future, lost earnings, lost earning capacity, loss of ability to earn wages in the future; and has been otherwise harmed, injured and damaged.

77.     In researching, testing, designing, manufacturing, labeling, selling, distributing, advertising, promoting, marketing, servicing, and/or supplying e-cigarettes and related products, Defendants, and each of them, did so in conscious disregard for the safety of the users and consumers of said products, as well as bystanders and others who would foreseeably come into contact with said products.   Upon information and belief, Defendants, and each of them, had specific prior knowledge that there was a high risk of injury or death resulting from the use of said products.

78.     Upon information and belief, Defendants, and each of them, were aware that users of e-cigarettes and related products had no knowledge or information indicating that the e-cig products could cause serious and life-threatening injury, and Defendants knew that the users of e-cig products would assume, and in fact did assume, that the e-cig products were safe, when in fact said products posed an unreasonable hazard to human life and safety.

79.     Upon information and belief, with said knowledge, Defendants, and each of them, opted to design, manufacture, sell, label, distribute, warrant, market, service, and/or supply e-cigarettes and related products without attempting to protect users and consumers of the high risk of injury or death resulting from the use of said products.  Rather than attempting to warn and/or protect users and consumers from said hazards, Defendants, and each of them, intentionally failed to reveal their knowledge of said risks, and fraudulently, knowingly, consciously and actively concealed and suppressed said knowledge

from users, consumers, and other members of the general public, including Plaintiff.

80.    Upon information and belief, the aforementioned conduct of Defendants, and each of them, was motivated by the financial interests of Defendants in the continuing, uninterrupted manufacture, distribution, supply and sale of said products.    In pursuance of said financial motivation, Defendants, and each of them, consciously disregarded the safety of users and consumers of said products.

81.    WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as herein set forth.

**B. Strict Liability for Manufacturing Defect as to Defendant Samsung**

82.    At all relevant times, Defendant Samsung was engaged in the business of designing, manufacturing, marketing, distributing, assembling, selling and/or otherwise intentionally placing lithium-ion 18650 batteries into the stream of commerce and directing such products to Texas, including the e-cigarette, charger, and battery that injured Plaintiff.

83.    The e-cig products were defectively manufactured. Specifically, the e-cigarette, charger, and battery deviated from its specifications in a manner that rendered the product unreasonably dangerous.

84.    The e-cig products were in the same condition at the time Plaintiff was injured as it was when it was originally placed into the stream of commerce and at the time it was ultimately sold to Plaintiff by Defendants.

21

85.     The defective manufacture of the e-cig products was a direct and producing cause of substantial injuries and damages to Plaintiff.

**C. Strict Liability for Marketing Defect as to Defendant Samsung, Firehouse, and Macromall**

86.     At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, assembling, selling and/or otherwise intentionally placing the e-cig products into the stream of commerce and directing such products to Texas, including the e-cig products that injured Plaintiff.

87.     At the time the e-cigarette device, charger, and battery in question were manufactured, marketed, distributed and sold by Defendants, the e-cig products contained an inherent risk of harm that could arise from intended or reasonably anticipated use and/or handling. Defendants knew or should have reasonably foreseen the risk of harm at the time the e-cig products were marketed. The absence of proper warnings and/or instructions rendered the e-cig products defective and unreasonably dangerous.

88.     Defendants' failure to warn and/or instruct was the direct and producing cause of substantial injuries and damages to Plaintiff.

**D. Respondent Superior**

89.     At all relevant times, all agents, servants and/or employees of Defendants were acting within the course and scope of employment and/or official duties. Furthermore, at all relevant times, all agents, servants, and/or

employees of Defendants were acting in furtherance of the duties of their office and/or employment.

90.     Therefore, Defendants are responsible for all damages resulting from the negligent acts and/or omissions of its agents, servants, and/or employees pursuant to the doctrine of Respondent Superior.

**E.  Breach of Express Warranty as to the Amazon Defendants, Macromall, and Firehouse Vapors, LLC**

91.     Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though fully stated herein.

92.     The Amazon Defendants, Macromall, and Firehouse Vapors, LLC, and each of them, expressly warranted that the e-cig products were safe and effective for their intended and/or reasonably foreseeable use.

93.     The e-cig products, and each of them, failed to conform to these express warranties as they caused and continue to cause serious injury to the health and safety of users and bystanders when used as intended and/or in a reasonably foreseeable manner.

94.     Plaintiff, as an ordinary consumer, relied on the express warranties by Defendants, and each of them, in using the e-cig products.

95.     As a direct and proximate result of the breach of express warranties by Defendants, and each of them, Plaintiff suffered injuries as previously alleged.  The breach of express warranties by Defendants, and each

of them, was a substantial factor in causing the injuries to Plaintiff as previously alleged.

**F.  Breach of Implied Warranty as to All Defendants**

96.    Plaintiffs repeat and re-allege all preceding paragraphs as if set forth fully herein.

97.    Defendants are engaged in the business of designing, manufacturing, marketing, distributing, assembling, and/or selling e-cig products to the public, including the e-cigarette device, charger, and battery that injured Plaintiff.

98.    Defendants warranted that the e-cig products which injured Plaintiff as good and fit for the ordinary purpose for which such e-cig products are used; namely lithium-ion 18650 batteries used in conjunction with e-cigarettes. The e-cigarette device, charger, and battery were not fit for such purposes. Defendants, therefore, breached the implied warranty of merchantability.

99.    In Texas, the implied warranty of merchantability is extended to any person who may be reasonably expected to use, consumer, or be affected by the goods.

100.   The unmerchantability of the e-cig products directly and proximately caused Plaintiff substantial injuries and damages.

**G.  Gross Negligence as to All Defendants**

101.     Defendants committed acts of omissions and commission, as listed above, which collectively and severally constituted gross negligence, and that gross negligence proximately caused Plaintiff's injuries and damages for which Plaintiff is entitled to recover punitive damages.

102.     When viewed objectively, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others. Defendants knew of this extreme risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Plaintiffs.

## VII.   Damages

103.     Defendants' conduct as described herein was the direct and producing cause of serious injuries and damages to Plaintiff. Plaintiff therefore seeks recovery for damages suffered as a result of Defendants' conduct, including all remedies allowed at law, general and special, including but not limited to the following elements of damages:

     a.   Medical care expenses in the past and future;

     b.   Physical pain in the past and future;

     c.   Mental anguish in the past and future;

     d.   Physical impairment in the past and future;

     e.   Disfigurement in the past and future; and

     f.   Loss of earning capacity in the past and future.

104.     Plaintiff is also entitled to punitive damages due to the conduct and gross negligence described herein.

105.    The  amount  of  damages  that  would  fairly  and  reasonably compensate Plaintiff for his injuries is to be properly determined by a jury after consideration of all the evidence presented at trial. However, in satisfaction of the requirements imposed by Rule 47 of the Texas Rules of Civil Procedure, Plaintiff  states  that  he  seeks  monetary  relief  over  $1,000,000.00.  Plaintiff specifically reserves the right, provided by the Texas Rules of Civil Procedure, to amend and/or supplement this pleading.

## VIII.   Jury Trial Requested

106.    Pursuant  to  Rule  216  of  the  Texas  Rules  of  Civil  Procedure, Plaintiff asserts his request for a jury trial. A jury fee has been paid to the Brazoria County District Clerk.

## IX.     Request for Disclosure

107.    Defendants  are  requested  to  disclose,  within  fifty  (50)  days  of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## X.     Conditions Precedent

108.    All  conditions  precedent  to  Plaintiff's  right  to  recover  and  to Defendants' liability have been performed or have occurred.

109.    Nothing Plaintiff did caused or contributed to this occurrence.

## XI.    Prayer

WHEREFORE,  PREMISES  CONSIDERED,  Plaintiff  respectfully requests that Defendants be ordered to pay all of Plaintiff's actual damages,

exemplary damages, statutory damages and penalties, attorneys' fees, costs of court, pre- and post-judgment interest at the maximum rate allowed by law, and that Plaintiff be granted such other and further relief to which they may be entitled at law or in equity.

Respectfully submitted,

**EILAND & BONNIN, PC**
**LEVIN SIMES ABRAMS, LLP**

By: _A Craig Eiland_

A Craig Eiland
TX Bar No. 06502380
Eiland & Bonnin, PC
1220 Colorado Street, Suite 300
Austin, TX 78701
Telephone: (409) 763-3260
Facsimile: (713) 513-5211
CEiland@eilandlaw.com


Angela J. Nehmens
*To Be Admitted Pro Hac Vice*
Levin Simes Abrams LLP
1700 Montgomery Street, Suite 250
San Francisco, CA 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
anehmens@levinsimes.com

*Attorneys for Plaintiff*

Filed: 8/13/2021 8:43 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 56276900
By: Shailja Dixit
8/13/2021 8:49 AM

CAUSE NO. 21-CV-0426

| | | |
|---|---|---|
| JAMES ETHRIDGE | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| SAMSUNG SDI CO., LTD., | § | |
| AMAZON. COM, INC., | § | |
| AMAZON.COM SERVICES, INC., and | § | |
| FIREHOUSE VAPORS, LLC | § | |
| | § | |
| Defendants. | § | 405TH JUDICIAL DISTRICT |

## DEFENDANT SAMSUNG SDI CO., LTD.'S SPECIAL APPEARANCE CONTESTING PERSONAL JURISDICTION

Defendant Samsung SDI Co., Ltd. ("SDI Co."), prior to filing a motion to transfer venue or any other plea, pleading, or motion, objects to the exercise of jurisdiction over SDI Co. by this Court. This Special Appearance is filed pursuant to Tex. R. Civ. P. 120a and is supported by the Declaration of Heuiseob Shin, which is attached as Exhibit A to this Special Appearance. The exercise of personal jurisdiction over SDI Co. by this Court would constitute a violation of due process.

## INTRODUCTION

SDI Co. is a corporation incorporated under the laws of the Republic of Korea and has its headquarters and principal place of business in the Republic of Korea. Plaintiff James Ethridge alleges he was injured when a Samsung 18650 battery he purchased on an Amazon website exploded in his pants pocket.

The Samsung 18650 battery is not designed, manufactured, or marketed for individual use by individual persons. Instead, the 18650 battery is designed and marketed to be used in specific applications by sophisticated entities through two channels of distribution. The first channel of distribution involves the bulk sale of 18650 battery cells by SDI Co. to entities which assemble

1



the 18650 battery cells into battery packs for subsequent sale and distribution (the "Packer Distribution Channel").  The second channel of distribution involves the direct bulk sale of 18650 battery cells by SDI Co. to certain transacting companies involved in the manufacture of authorized products (the "Transacting Companies") or the supply chain leading to the manufacture of authorized products (the "Transacting Distribution Channel").  SDI Co. has never sold any 18650 batteries to a resident of Texas, has never shipped any 18650 batteries to a Texas address, and has never sold any 18650 batteries to any of the Amazon Defendants or other Amazon entity.

In his Original Petition, Plaintiff asserts that on or around November 22, 2019, he had a lithium-ion battery in his pants pocket when suddenly and without warning, the battery exploded and caught fire, causing him to sustain severe burns and other injuries.  Plaintiff alleges that he purchased the battery through an Amazon website on or around October 29, 2018.  In Paragraph 16 of his Original Petition, Plaintiff alleges that this Court "has personal jurisdiction over Defendant Samsung SDI Co. Ltd because of its purposeful, continuous, and systematic contacts with Texas entities and the Texas market, and because its products are sold in and throughout Texas."  In Paragraph 40, Plaintiff alleges upon "information and belief" that the "lithium-ion battery that injured Plaintiff was manufactured, marketed, sold, distributed, or otherwise placed into the stream of commerce by Defendant Samsung SDI Co. Ltd."

The allegations that SDI Co. placed a product into the stream of commerce, that the product eventually appeared in Texas, and that the product injured him appear to be an attempt to invoke the Court's exercise of specific jurisdiction over SDI Co.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) (although the placement of a product into the stream of commerce "may bolster an affiliation germane to *specific* jurisdiction," such contacts "do not warrant a determination that, based on those ties, the forum has general jurisdiction over a

defendant"). The allegation of business conducted in a continuous and systematic manner is an attempt to invoke the Court's general jurisdiction over SDI Co. *See id.* at 917-18.

## THE BURDEN OF PROOF IN A SPECIAL APPEARANCE PROCEEDING

When a defendant challenges personal jurisdiction, the plaintiff and the nonresident defendant bear shifting burdens of proof. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W. 3d 550, 559 (Tex. 2018). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Id.* The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden. *LG Chem, Ltd. v. Turner*, No. 14-19-00326-CV, 2021 Tex. App. LEXIS 4200, at *2-3 (Tex. App. May 27, 2021).

If the plaintiff meets his initial pleading burden, the burden shifts to the nonresident defendant to negate all basis of personal jurisdiction alleged by the plaintiff. *Bell*, 549 S.W.3d at 559. The defendant can negate jurisdiction on either a factual or legal basis. *Turner*, 2021 Tex. App. LEXIS 4200, at *3. Factually, the nonresident defendant can present evidence that it has no contacts with Texas to disprove the plaintiff's allegations. *Kelly v. Gen. Interior Constr. Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). "Legally, the nonresident defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; that the contacts do not constitute purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts with Texas; or that the exercise of jurisdiction offends traditional notions of fair play and substantial justice." *Turner*, 2021 Tex. App. LEXIS 4200, at *3.

## CONSTITUTIONAL LIMITS ON THE EXERCISE OF PERSONAL JURISDICTION

The due process parameters of when a court may properly exercise personal jurisdiction over a nonresident defendant have evolved significantly since the venerable decision in

3

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *International Shoe* distinguished between the exercise of specific jurisdiction, where the lawsuit arises out of or relates to the nonresident defendant's contacts with the forum state, and general jurisdiction where a foreign corporation's continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from the defendant's in-state activities.  326 U.S. at 317-18; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 918-19 (addressing the distinction between general jurisdiction and specific jurisdiction); *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (same).  However, since the decision in *International Shoe*, "specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction [has played] a reduced role."  *Goodyear*, 564 U.S. at 925, quoting Twitchell, *The Myth of General Jurisdiction*, 101 HARV. L.REV. 610, 628 (1988).

General jurisdiction over a nonresident defendant has become much narrower over the last twenty years.  The United States Supreme Court summarized the extremely limited power of a state to exercise general jurisdiction over an out-of-state defendant in *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017):

> *Goodyear* and *Daimler* clarified that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S., at ——, 134 S.Ct., at 754 (quoting *Goodyear*, 564 U.S., at 919, 131 S.Ct. 2846). The "paradigm" forums in which a corporate defendant is "at home," we explained, are the corporation's place of incorporation and its principal place of business. *Daimler*, 571 U.S., at ——, 134 S.Ct., at 760; *Goodyear*, 564 U.S., at 924, 131 S.Ct. 2846. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S., at ——, n. 19, 134 S.Ct., at 761, n. 19. We suggested that *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), exemplified such a case. *Daimler*, 571 U.S., at ——, n. 19, 134 S.Ct., at 761, n. 19. In *Perkins*, war had forced the defendant corporation's

4

owner to temporarily relocate the enterprise from the Philippines to Ohio. 342 U.S., at 447–448, 72 S.Ct. 413. Because Ohio then became "the center of the corporation's wartime activities," *Daimler*, 571 U.S., at ——, n. 8, 134 S.Ct., at 756, n. 8, suit was proper there. *Perkins*, 342 U.S., at 448, 72 S.Ct. 413.

The Texas Supreme Court adheres to the distinction between general jurisdiction and specific jurisdiction. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 796 (Tex. 2002) (general jurisdiction is present "when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state"); *and Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018) (specific jurisdiction, by contrast, is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum).

Earlier this year, the Fourteenth Court of Appeals set forth the constitutional limits of the exercise of jurisdiction by a Texas court over a nonresident manufacturer of a battery that was being used in a vaping device:

> Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Bell*, 549 S.W. 3d at 558 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). The long-arm statute is satisfied when a defendant commits a tort in whole or in part in this state. *Id.* at 558–59 (citing Tex. Civ. Prac. & Rem. Code § 17.042(2)). However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution. *Id.* at 559.

> To establish personal jurisdiction over a nonresident, federal due process requires that the nonresident must have "certain minimum contacts with [the forum state] such that it does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A nonresident establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[T]he

5

defendant's in-state activities 'must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.'" *Bell*, 549 S.W.3d at 559 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

When determining whether a defendant has purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated.... Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* (quoting *Moncrief Oil*, 414 S.W.3d at 151). We assess the quality and nature of the contacts, not the quantity. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016).

A defendant's contacts may give rise to general or specific jurisdiction. *Bell*, 549 S.W.3d at 559. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). "The 'paradigm' forums in which a corporate defendant is 'at home' ... are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.19). However, the exercise of general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business is "unacceptably grasping." *Daimler AG*, 571 U.S. at 138. The flow of a product into a forum may "bolster an affiliation germane to specific jurisdiction." *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 927. "But ties serving to bolster specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant." *Id.*

For a Texas court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant's contacts with Texas must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Bell*, 549 S.W.3d at 559. A defendant's awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). Purposeful conduct generally requires "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum

State.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)). Examples of additional conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112; *see also Spir Star*, 310 S.W.3d at 873.

The nonresident defendant's purposeful contacts "must be substantially connected to the operative facts of the litigation or form the basis of the cause of action." *Bell*, 549 S.W.3d at 559–60. Operative facts are the facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585.

*LG Chem, Ltd. v. Granger*, 2021 WL 2153761, *2-3 (Tex. App.—Houston [14th Dist. 2021], no

pet. hist.).

## THE GRANGER DECISION CONTROLS THIS CASE

The resolution of the special appearance filed by SDI Co. is made substantially easier in

the recent decision of the Fourteenth Court of Appeals in *Granger*.  In that case, three individuals

alleged they suffered second and third degree burns when batteries manufactured and designed by

LG Chem "unexpectedly exploded."  The three plaintiffs, all of whom were Texas residents, each

alleged that they purchased an HG2 18650 lithium-ion battery in Texas from a "vapor" or "e cig"

shop and were injured by the battery in Texas.  *Id.* at 1.

LG Chem is a Korean corporation with its headquarters and principal place of business

located in the Republic of Korea.  LG Chem filed a special appearance contesting personal

jurisdiction in Texas and attached the affidavit of a senior manager which stated that LG Chem had

no systematic connections to Texas, was not incorporated or headquartered in Texas, never had

any physical presence in Texas, never had an office, telephone number, post office box, mailing

address or bank account in Texas, never had been registered to do business in Texas, never owned

or leased real property in Texas, and never had a registered agent for service of process in Texas.

The affidavit also stated that LG Chem:

(1) "does not design or manufacture lithium-ion power cells for sale to individual consumers as standalone batteries;"

(2) "does not distribute, advertise, or sell power cells directly to consumers, and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to distribute, advertise, or sell [appellant's] lithium-ion power cells directly to consumers as standalone batteries;"

(3) "does not design, manufacture, distribute, advertise, or sell lithium-ion power cells for use by individual consumers ... as replaceable or rechargeable power cells in electronic cigarette or vaping devices;" and

(4) "manufactures lithium-ion power cells for use in specific applications by sophisticated companies."

*Id.*

The Fourteenth Court of Appeals, in a unanimous decision authored by Justice Christopher, ruled that Texas courts lacked both general and specific jurisdiction over LG Chem. On the issue of general jurisdiction, there was evidence that LG Chem sold batteries worldwide and across the United States, with more than eleven percent of LG Chem's yearly revenue coming from sales and imports in the United States. There was also evidence that LG Chem had sales in Texas, but there were no allegations or evidence of how much of LG Chem's business made up the Texas sales to Stanley Black and Decker and Hewlett Packard. There was also no indication of what the volume of those sales were. LG Chem maintained one warehouse in Texas. *Id.* at *4.

Despite these facts, the court held that the plaintiffs had not met their burden to establish general jurisdiction over the Korean manufacturer. The plaintiffs did not establish an "exceptional case" where the manufacturer's operations in Texas were so substantial and of such a nature as to render the corporation at home in Texas. *Id.*, quoting *BNSF Ry.*, 137 S. Ct. at 1558. The court ruled that LG Chem may be the "worldwide" leader in lithium-ion battery sales, but "like in

8

*Daimler* there is no indication, even assuming considerable sales in Texas, that appellant is 'at home'" in Texas.  2021 WL 2153761 at *4.

The Fourteenth Court of Appeals also held that a Texas court could not assert specific jurisdiction over the Korean manufacturer. Assuming without deciding that the plaintiffs established "purposeful contacts" between LG Chem and Texas, "the evidence is legally insufficient to establish jurisdiction because there is no indication that appellees' claims arose from or are related to appellant's contacts with Texas." *Id.* at *5.  A proven connection between the cause of action and the defendant's forum contacts "lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Id.*, quoting *Moki Mac*, 221 S.W.3d at 579. To satisfy this requirement, there must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Id.* at *5, citing *Spir Star*, 310 S.W.3d at 874.

The plaintiffs argued that there was a clear connection between LG Chem and Texas because of LG Chem's sale of and profit from lithium-ion batteries, including 18650 batteries in Texas.  While there was some proof that LG Chem had sold an undetermined amount of 18650 batteries to two large manufacturing companies in Texas, there was no evidence or allegation that these connections with Texas were in any way connected to the plaintiffs' claims.  The mere proof that the Korean manufacturer may have shipped the same type of battery to Texas as the type of battery alleged to have injured the plaintiffs was insufficient to establish specific jurisdiction over the manufacturer.  *See* 2021 WL 2153761 at *5-7.

The *Granger* court referred to two other vape battery decisions in Texas: *Schexnider v. E-Cig Central, LLC*, No. 06-20-00003-CV, 2020 WL 6929872 (Tex. App.—Texarkana 2020, no pet.) and *LG Chem Am., Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483 (Tex. App.—

Houston [1st Dist.] 2020, no pet. hist.)  In *Schexnider*, the manufacturer submitted an affidavit establishing that it manufactured its batteries to be used in battery packs for power tools that were to be put together by sophisticated entities, that the batteries were not designed, manufactured, distributed, advertised, or sold for use by individual consumers as replaceable, rechargeable batteries in electronic cigarette or vaping equipment, that the manufacturer had never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to advertise, distribute, or sell its batteries for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment, that the batteries were never sold, marketed, or distributed in Texas for use by individual consumers as replaceable, rechargeable batteries in e-cigarette or vaping equipment, and that the manufacturer had no control over the use or actions of the entities to which it sold the batteries, and that the manufacturer had no relationship with the retailer where the plaintiff purchased the battery.  The manufacturer admitted that it sold its batteries to at least one purchaser in Texas.  The court held that general personal jurisdiction did not exist because under the stream-of-commerce theory, it is not enough to show that a manufacturer was aware that its product would enter Texas through the stream of commerce. 2020 WL 6929872 at *7. There must be some showing of "additional conduct" on the part of the defendant that "indicates an 'intent or purpose to serve the market in the forum State,'" and the plaintiff failed to establish any additional conduct that would establish that the manufacturer purposefully availed itself of the benefits of doing business in Texas. *Id.*, quoting *Asahi Metal Ind. Co.*, 480 U.S. at 112. Specific personal jurisdiction also did not exist because even though the manufacturer sold its products to an entity in Texas, there was no showing that the battery that injured the plaintiff was one of the batteries sold by the manufacturer in Texas.  2020 WL 6929872 at *8-9.

10

In *Morgan*, the court overruled the nonresident defendant's special appearance based on "undisputed allegations and evidence...that LGC designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, and marketed them in Texas through a distributor that sold them in Texas" and concluded that these allegations showed "that [the plaintiff's] claims arise from or relate to the manufacture, marketing, and sale of LGC's batteries in Texas, which injured [the plaintiff] in Texas".  2020 WL 7349483 at *7, 11.  The facts in *Morgan* are dramatically different than the facts of the present case.  Those factual distinctions only show why jurisdiction is not proper over SDI Co. in this case.

### SDI CO. IS NOT SUBJECT TO THE GENERAL OR SPECIAL JURISDICTION OF A TEXAS COURT

When the facts of this case are analyzed in light of general personal jurisdiction principles and the detailed application of those principles in *Tyrell, Goodyear Dunlop*, *Granger, Schexnider*, and *Morgan*, it is obvious that SDI Co. is not subject to the personal jurisdiction of a Texas court under either the general or specific jurisdiction of a Texas court.

SDI Co. has never sold batteries to Amazon.com, Inc., Amazon.com Services, Inc., or any other Amazon entity. Any sale through an Amazon website was unauthorized, outside the two distribution channels established by SDI Co., and contrary to the instructions that came with the package that prohibited sales of individual batteries outside of a battery pack.

The lithium-ion 18650 batteries manufactured by SDI Co. are made in Asia and their distribution is limited to sophisticated entities who incorporate the batteries into power tools and similar equipment. SDI Co. has never sold any 18650 batteries directly to Texas, has never designed, marketed, or sold 18650 batteries for use in vaping, and has never sold any 18650 batteries to a customer in Texas. This is substantially less involvement with Texas than the manufacturers in *Granger* and *Morgan*.  For the same reasons, general jurisdiction over the foreign

11

manufacturer of 18650 batteries did not exist in those two cases, Plaintiff in this case has not established general jurisdiction over SDI Co. in Texas.

Plaintiff also fails to meet his burden to establish specific jurisdiction over SDI Co. in Texas.  There is no evidence of any conduct by SDI Co. in Texas, so there is no proof that the injuries allegedly suffered by Plaintiff were related to conduct by SDI Co. in Texas.  As a matter of law, Plaintiff's stream-of-commerce allegation is insufficient to establish specific personal jurisdiction.  Even if the specific jurisdictional allegation had been pled properly, there would be no evidence in support of the allegation.

## RELIEF REQUESTED

For the foregoing reasons, as well as such other evidence and argument that may be provided in open court, Defendant Samsung SDI Co., Ltd. respectfully requests that all claims against it be dismissed for lack of personal jurisdiction.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, LLP

By: _____

WILLIAM R. MOYE
State Bar No. 24027563
wmoye@thompsoncoe.com
TANYA N. WHITE
State Bar No. 24065823
twhite@thompsoncoe.com
One Riverway, Suite 1400
Houston, Texas 77056
Phone: (713) 403-8210
Fax:    (713) 403-8299
**E-Service**: Wmoye.service@thompsoncoe.com

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been sent to all known counsel of record pursuant to the Texas Rules of Civil Procedure on August 13, 2021.

WILLIAM R. MOYE

13

EXHIBIT
A

CAUSE NO. 21-CV-0426

| | | |
|---|---|---|
| JAMES ETHRIDGE | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| SAMSUNG SDI CO., LTD., | § | |
| AMAZON. COM, INC., | § | |
| AMAZON.COM SERVICES, INC., and | § | |
| FIREHOUSE VAPORS, LLC | § | |
| | § | |
| Defendants. | § | 405TH JUDICIAL DISTRICT |

DECLARATION OF HEUISEOB SHIN

I, Heuiseob Shin, declare as follows:

1.      I am a Principal Professional and authorized representative for specially appearing Defendant Samsung SDI Co., Ltd. ("SDI Co."). I have personal knowledge of the facts described in this declaration and have been authorized by SDI Co. to make this declaration. If called upon as a witness, I could and would testify competently under oath as to all such facts based upon my personal knowledge and the business records of SDI Co.

2.      This declaration is submitted in support of SDI Co.'s Special Appearance Contesting Personal Jurisdiction.

3.      By submitting this declaration, I do not consent to the jurisdiction of this Court on behalf of any person, SDI Co., or any other entity. To the contrary, the purpose of this Declaration is to challenge the Court's exercise of personal jurisdiction over SDI Co.

4.      SDI Co. is a South Korean corporation organized under the laws of the Republic of Korea with its headquarters and principal place of business in South Korea. SDI Co. designs and manufactures numerous sizes and models of batteries.

1

5.     SDI Co. has no employees, officers, business agents, directors, or representatives based in Texas.

6.     SDI Co. is not licensed or registered to do business in any state of the United States of America, including Texas.

7.     SDI Co. does not have a registered agent in Texas.

8.     SDI Co. does not have a bank account in Texas.

9.     SDI Co. does not own or control any personal or real property within Texas.

10.     SDI Co. does not have a mailing address, telephone, or telefax number in Texas.

11.     SDI Co. does not have an office, warehouse, or place of business in Texas.

12.     SDI Co. does not pay taxes in Texas.

13.     SDI Co. does not hold board meetings or other official meetings in Texas.

14.     Paragraph 16 of Plaintiff's Original Petition in the above-captioned case alleges that this Court has personal jurisdiction over Defendant Samsung SDI Co. Ltd because of its purposeful, continuous, and systematic contacts with Texas entities and the Texas market, and because its products are sold in and throughout Texas.  Paragraphs 36-40 of Plaintiff's Original Petition allege that Plaintiff purchased the battery that injured him through the Amazon Defendant's marketplace on or around October 29, 2018, that Plaintiff purchased his e-cigarette device from Defendant Firehouse Vapors, LLC, that on or around November 22, 2019, Plaintiff had a lithium-ion battery in his pants pocket that suddenly and without warning exploded and caught fire, causing Plaintiff to sustain severe burns and other injuries, and upon "information and belief," the lithium-ion battery that injured him was "manufactured, marketed, sold, distributed, or otherwise placed into the stream of commerce by Defendant Samsung SDI Co. Ltd."

2

15.     SDI Co. has never sold any product of any type to any retail store in Texas, including the store identified in Plaintiff's Original Petition.

16.     SDI Co.'s 18650 lithium-ion batteries are not designed or marketed to be used individually or outside a battery pack.

17.     SDI Co. has never sold its batteries, either in a battery pack or individually, to Amazon.com, Inc. or Amazon.com Services, Inc.

18.     SDI Co. markets its lithium-ion batteries on a business-to-business basis. This means SDI Co. only sells its 18650 lithium-ion batteries in bulk packaged boxes to sophisticated and qualified companies. SDI Co. sells its 18650 lithium-ion battery cells through one of two different channels of distribution. The first channel of distribution involves the bulk sale of 18650 battery cells by SDI Co. to entities which assemble the 18650 battery cells into battery packs for subsequent sale and distribution (the "Packer Distribution Channel"). The second channel of distribution involves the direct bulk sale of 18650 battery cells by SDI Co. to certain transacting companies involved in the manufacture of authorized products (the "Transacting Companies") or the supply chain leading to the manufacture of authorized products (the "Transacting Distribution Channel").

19.     With respect to the Packer Distribution Channel, SDI Co. sells its 18650 lithium-ion battery cells to various entities called "Packers." Each such Packer is located in Asia (generally in China and Taiwan) and all sales of 18650 battery cells within the Packer Distribution Channel occur in Asia. All Packers are associated with the making of authorized products.

20.     After purchasing SDI Co.'s 18650 battery cells, the Packer will use the 18650 battery cells to manufacture a battery pack that the Packer itself has designed. The battery pack

combines the 18650 battery cells and a battery management system ("BMS") within an exterior case to form a single battery pack unit. A BMS is an electronic circuit board that monitors the batteries and protects the batteries from operating outside of safe parameters. A BMS detects individual cell failures and prevents thermal runaway. Thus, when a Packer consummates a sale to its customer, that customer receives an integrated battery pack designed and manufactured by the Packer rather than 18650 lithium-ion battery cells alone. The battery-pack is then incorporated into and/or used to power an authorized product (for example, a power drill or a laptop computer).  An example of a battery pack unit looks like this:



21.    After SDI Co. completes the sale of its 18650 battery cells to Packers in Asia, SDI Co. does not have the right or ability to control the subsequent sales of battery packs by Packers to their customers. Thus, SDI Co. does not have the right or ability to control the geographic location of sales from Packers to their customers. SDI Co. does not have the right or ability to control the volume of sales from Packers to their customers. SDI Co. does not track the volume or location of sales by Packers to their customers. SDI Co. receives no financial benefit from sales by Packers to their customers. SDI Co.'s interaction with its 18650 battery cells under the Packer Distribution Channel thus ends at the point of sale in Asia.

22.    With respect to the Transacting Distribution Channel, SDI Co. makes direct bulk sales of battery cells to sophisticated Transacting Companies located in Asia, Europe, and North

America.  Every Transacting Company is a sophisticated company involved in either the manufacture of authorized products or the supply chain leading to the manufacture of authorized products. Battery cells sold in the Transacting Distribution Channel are ultimately incorporated into battery packs (containing battery management systems) which are themselves used in authorized products.  Each Transacting Company is an independent, separate, and distinct entity from SDI Co.  No Transacting Company is an affiliate or subsidiary of SDI Co.

23.     After completing the sale of its 18650 lithium-ion battery cells to a Transacting Company, SDI Co. does not have the right or ability to control the Transacting Company's subsequent use or sale of the battery cells or an assembled battery pack. Thus, SDI Co. does not have the right or ability to control the geographic location of sales from Transacting Companies to their customers. SDI Co. does not have the right or ability to control the volume of sales from Transacting Companies to their customers. SDI Co. does not track the volume or location of sales by Transacting Companies to their customers. SDI Co. receives no financial benefit from sales by Transacting Companies to their customers. SDI Co.'s interaction with its battery cells under the Transacting Distribution Channel thus ends at the point of sale from SDI Co. to the particular Transacting Company.

24.     None of the lithium-ion batteries sold by SDI Co. to Packers or Transacting Companies were shipped by SDI Co. to an address in Texas or to any Amazon company at any location.

25.     Any sale of individual SDI Co. 18650 batteries on Amazon's websites were not authorized by SDI Co.

26.     SDI Co. does have a relationship with a Transacting Company called eSDI Hong Kong which, upon information and belief is affiliated with a Texas based entity called eSDI,

LLC. eSDI Hong Kong and eSDI, LLC arc wholesalers/distributors of lithium-ion batteries. Like other Transacting Companies, eSDI Hong Kong and eSDI, LLC are in the supply chain leading to the manufacture of authorized products. eSDI Hong Kong and eSDI, LLC are wholly separate and independent entities from SDI Co. SDI Co. has no ownership interest in eSDI Hong Kong or eSDI, LLC and neither eSDI Hong Kong nor eSDI, LLC have an ownership interest in SDI Co.

27.     SDI Co. has sold 18650 lithium-ion battery cells to eSDI Hong Kong. All such sales have occurred in Asia. SDI Co. does not have the right or ability to control what eSDI Hong Kong does with battery cells after a completed sale. SDI Co. has never shipped or distributed lithium-ion batteries to eSDI, LLC in Texas.

28.     SDI Co. does not manufacture any battery cells to be used in e-cigarette/vaping devices like the one described in Plaintiff's Original Petition. To the contrary, SDI Co. has gone to great lengths to prevent and stop the misuse of its 18650 lithium-ion batteries in e-cigarette/vaping devices.

29.     SDI Co. utilizes a customer vetting process called the Customer Environment Test requiring each SDI Co. customer to submit an application detailing its intended use of the purchased 18650 battery cells. SDI Co. will not approve any sale if a customer's application reveals connections to distributors or sellers in the e-cigarette/vaping industry.

30.     In July 2017, SDI Co. revised its website (www.samsungsdi.com) to provide additional warnings and instructions regarding proper charging, use, handling, storage, and disposal of all of its 18650 lithium-ion batteries. Because the only intended users of SDI Co.'s 18650 lithium-ion batteries are sophisticated Packers and Transacting Companies, SDI Co.'s website specifically warns "DO NOT use individual, cylindrical Lithium Ion Batteries if you are

6

a consumer or end-user." SDI Co. further instructs to "NEVER remove individual Lithium-Ion Batteries from Battery Packs."

31.     In July 2017, SDI Co. enhanced its warnings on all 18650 lithium-ion batteries to expressly raise the potential for fire, explosion, serious injury, or death associated with unauthorized usage/misuse. Such warnings referred to SDI Co.'s website for a complete list of proper uses for 18650 lithium-ion batteries. SDI Co. has never recognized use in an e-cigarette/vaping device as an appropriate or authorized use of 18650 lithium-ion batteries.

32.     Beginning in May 2017, SDI Co. began presenting training workshops to its customers highlighting the dangers of using 18650 lithium-ion batteries in e-cigarette/vaping devices. SDI Co. has organized ten such workshops to date.

33.     . Such documents provide warnings and instructions as to the proper handling, storage, and use of SDI Co.'s 18650 lithium-ion batteries. SDI's Co.'s product specification documents also warn against the risk associated with overheating or using the 18650 battery cells in an unauthorized manner. The product specifications for SDI Co.'s 18650 lithium-ion batteries expressly state that "the [battery] cell should not be dismantled from the battery pack." Those specifications further state that "inaccurate handling of lithium-ion and lithium-ion batteries . . . may cause leakage, heat, smoke, an explosion, or fire." Customers under either the Packer or Transacting Distribution Channel must sign an acknowledgment of SDI Co.'s specification as a precondition of any sale.

34.     As of January 2018, product specification documents or SDI. Co.'s 18650 lithium-ion batteries have included the following, e-cigarette-specific warning:

**Vape or E-cigarette device warning**.

Samsung SDI's cells are not designed or manufactured for use in any vape or e-cigarette devices.

7

Samsung SDI's cells are designed for use and to be incorporated into a battery management unit that reduces the risk of thermal runway.

Samsung SDI's cells are not designed for and should not be handled by any individual consumer.

Samsung SDI did not authorize any third parties, including vape or e-cigarette device manufacturers, retailers, and distributors to sell or use Samsung SDI's cells for individual consumers as power sources in e-cigarettes or vape devices. Any online e-commerce sales, sales to individual consumers, or sales to third parties for such purposes are strictly prohibited.

35.    SDI Co. does not ship, sell, or distribute 18650 lithium-ion batteries to Texas.

36.    SDI Co. does not advertise or market 18650 lithium-ion batteries in Texas or to Texas consumers. SDI Co. does not market 18650 lithium-ion batteries through a sales agent in Texas.

37.    SDI Co. has never shipped 18650 lithium-ion battery cells to Texas to be used individually and outside an assembled battery pack.

38.    SDI Co. does not design its 18650 lithium-ion batteries for the market in Texas.

39.    SDI Co. has not established channels for providing regular advice to customers in Texas regarding 18650 lithium-ion batteries.

40.    SDI Co. has never authorized any third party to advertise, distribute, or sell SDI Co. 18650 lithium-ion batteries for use by individual consumers as replaceable, rechargeable batteries in e-cigarette devices.

41.    SDI Co. has never authorized any distributor, wholesaler, retailer, or re-seller to advertise or sell SDI Co. 18650 lithium-ion batteries individually. SDI Co. has never authorized any distributor, wholesaler, retailer, or re-seller to advertise or sell SDI Co. 18650 lithium-ion batteries to be used without the control of a battery management system.

## JURAT SUBJECT TO PENALTY OF PERJURY

My name is Heuiseob Shin, my date of birth is December 14, 1965, and my address is 467, Beonyoung-ro, Cheonan city, Chungcheongnam-do, Republic of Korea. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Cheonan (city), Republic of South Korea, on August 11, 2021.

_____
Heuiseob Shin
Declarant

9