United States District Court
Southern District of Texas
**ENTERED**
July 26, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-306

JAMES ETHRIDGE, *PLAINTIFF*,

v.

SAMSUNG SDI CO., LTD., *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant Samsung SDI Co., Ltd.'s (Samsung) amended motion to dismiss under Rule 12(b)(2). Dkt. 29. The court grants the motion.

## I.    BACKGROUND

The plaintiff, James Ethridge, alleges his e-cigarette device's lithium-ion battery "exploded and caught fire" in his pants pocket, causing him "severe burns and other injuries." Dkt. 1-2 ¶¶ 36–38. Ethridge purchased the device on Amazon from Firehouse Vapors, LLC. *Id.* ¶ 39. He alleges Samsung manufactured the battery. *Id.* ¶ 40.

Ethridge sued Samsung; Firehouse Vapors; and Amazon.com, Inc., and Amazon.com Services, Inc. (together, "Amazon") in state court. Dkt. 1-2. After Ethridge voluntarily dismissed Firehouse Vapors—a Texas LLC—the parties became completely diverse and Samsung consented to Amazon's removal to this court. Dkt. 1. Ethridge raises five causes of action: (1) negligent products liability; (2) strict products liability; (3) breach of express warranty; (4) breach of implied warranty; and (5) gross negligence. Dkt. 1-2 ¶¶ 44–94.

## II.   LEGAL STANDARD

Samsung moves to dismiss Ethridge's claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. 29. The plaintiff bears the burden of establishing jurisdiction by *prima facie* evidence. *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). The court considers the assertions in the plaintiff's complaint and the record at the time of the motion. *Id.* The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Frank*, 947 F.3d at 336. The Texas long-arm statute confers jurisdiction to the limits of due process. *Id.* Due process permits the exercise of personal jurisdiction over a nonresident defendant when that defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779 (2017)).

"The Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction." *Alexander v. Anheuser-Busch, L.L.C.*, No. 19-30993, 2021 WL 3439131, at *2 (5th Cir. Aug. 5, 2021). "General jurisdiction arises when the defendant has

'continuous and systematic' contacts with the forum and 'allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Id.* (quoting *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)). "[F]or a state to have the power to hear [general] claims against a defendant, the defendant's ties with the state must be so pervasive that he is 'essentially at home' there." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024. "To be subject to specific jurisdiction, the defendant must have acted to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State' and 'there must be an affiliation between the forum and the underlying controversy.'" *Alexander*, 2021 WL 3439131, at *2 (quoting *Ford Motor Co.*, 141 S. Ct. at 1024–25) (internal quotation marks and citation omitted). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state."

*Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quotation omitted).

The court applies the Fifth Circuit's three-prong test in determining whether the exercise of specific jurisdiction comports with the demands of due process:

> (1) [whether] the defendant has formed minimum contacts with the forum state by purposely directing its activities toward the forum state or purposefully availing itself of the privileges of the state; (2) whether the cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Alexander*, 2021 WL 3439131, at *2 (citing *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019)).

## III.   ANALYSIS

Samsung claims that the court's exercise of personal jurisdiction over it would violate due process because it does not have minimum contacts with the State of Texas and the assertion of such jurisdiction would offend traditional notions of fair play and substantial justice. Dkt. 29 at 1.

Samsung argues that the battery that injured Ethridge—a Samsung 18650 lithium-ion battery—is not "designed, manufactured, or marketed for individual use by individual persons." *Id.* at 3. "Instead, the 18650 battery is designed and marketed to be used in specific applications by sophisticated entities through two distribution channels:"

(1)   the bulk sale of 18650 battery cells by Samsung to companies only in Asia that assemble the 18650 battery cells into battery packs for subsequent sale and distribution (the Packer Distribution Channel); and

(2)   the direct bulk sale of 18650 battery cells by Samsung to certain "transacting companies" engaged in either the manufacture of authorized products or the supply chain leading to the manufacture of authorized products (the Transacting Distribution Channel).

*Id.*

Samsung contends that these distribution channels were not intended to serve the retail market for single lithium-ion batteries used by individual consumers or for single lithium-ion batteries in e-cigarettes. Dkt. 33 at 4–5. It adds that it has never sold any 18650 batteries for standalone use to a resident of Texas, shipped any 18650 batteries to a Texas address outside of its controlled distribution channels, or sold any 18650 batteries to any Amazon entity. Dkt. 29 at 3. Samsung also insists it "has never sold any product of any type to any retail store in Texas." Dkt. 29 at 22.

Ethridge concedes Samsung is not "at home" in Texas for the purposes of general jurisdiction, but maintains its contacts with the State subject it to specific jurisdiction. Dkt. 31 at 2. Ethridge argues that Samsung targets the Texas market by shipping the exact same type of lithium-ion batteries directly into the State. *Id.* He adds that Texas law does not support Samsung's argument that it can avoid personal jurisdiction because it does

not intend for the batteries to be used by individual consumers and allegedly has no relationship with the defendants who acted as downstream sellers, it avoids personal jurisdiction. *Id.*

The court turns to the three-prong test for personal jurisdiction. *See Carmona*, 924 F.3d at 193.

### A. Purposeful Availment

"The contacts needed for [specific] jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co.*, 141 S. Ct. at 1024. "The defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Such contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws." *Int'l Shoe*, 326 U.S. at 319. For example, where a defendant corporation has deliberately engaged in doing business in the forum, it has "clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The Due-Process Clause . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* Accordingly, a nonresident may purposefully avoid personal jurisdiction in a particular forum by structuring its activities so as to derive benefit from neither the forum's laws nor its residents. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)); *see also Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) ("[A] defendant may permissibly alter its behavior in certain ways to avoid being subject to suit."). Even so, a "truly interstate business may not shield itself from suit by

a careful, but formalistic structuring of its business dealings." *Vencedor Mfg. Co., Inc. v. Gougler Indus., Inc.*, 557 F.2d 886, 891 (1st Cir. 1977).

"In the context of products-liability cases, like the case presently before [the court], an analysis involving a stream-of-commerce metaphor is often employed to assess whether the non-resident defendant has minimum contacts with the forum." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x. 285, 289 (5th Cir. 2020) (unpublished). "[C]ourts use the metaphor to allow for jurisdiction where 'the product has traveled through an extensive chain of distribution before reaching the ultimate consumer.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011)). The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction—'by sending its goods rather than its agents' into the forum." *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)).

"The Fifth Circuit has found this doctrine and thus minimum contacts satisfied so long as the court determines 'that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.'" *Zoch*, 810 F. App'x.

at 290 (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)). "Mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv N' care, Ltd.*, 438 F.3d at 470 (citing *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 111 (1987)). But "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'" *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012).

> [The Fifth Circuit] adopted this position in an effort faithfully to interpret *World-Wide Volkswagen*, 444 U.S. at 298, which holds that a state does not offend due process by exercising jurisdiction over an entity that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

*Id.* "Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv N' care, Ltd.*, 438 F.3d at 470.

This "mere foreseeability," or stream-of-commerce, test follows Justice Brennan's concurrence in *Asahi*, 480 U.S. at 116, as the circuit has "declined to follow the suggestion of the plurality in *Asahi*, 480 U.S. at 112, that some additional action on the part of the defendant, beyond foreseeability, is necessary to 'convert the mere act of placing the product

into the stream into an act purposefully directed toward the forum State.'"[1]
*Luv N' care, Ltd.*, 438 F.3d at 470 (quoting *Asahi*, 480 U.S. at 112).

Applying these standards, the court addresses Samsung's alleged contacts with Texas.

### 1. Lithium-Ion Battery Shipments to Texas

Ethridge has appended to his response brief what he says is ten years' worth of import data showing "shipments made by Samsung to Texas entities and/or through Texas ports." Dkt. 31 at 4. He purports to have "identified 225 shipments that entered through the [P]ort of Houston, of which 83 had product descriptions containing rack frames and wiring harnesses, which are used in energy[-]storage systems; eight of those shipments had product descriptions including [the term] 'lithium-ion battery.'" *Id.*

Samsung objects to Ethridge's data as inadmissible. Dkt. 33 at 5, 14–15. And even if it were admissible, Samsung argues, the mere fact that a customer unilaterally makes arrangements to ship a product to Texas, or that some entity obtains Samsung products elsewhere before unilaterally deciding to use them in Texas, is no proof of Samsung's intent to serve a

---

[1] This competing interpretation is known as the stream-of-commerce-plus test.

Texas market. *Id.* at 5. Unilateral decisions by unaffiliated third parties, Samsung contends, are irrelevant to the purposeful-availment inquiry. *Id.*

The court agrees. The data may show Samsung products being shipped to Texas by unauthorized third parties,[2] but not necessarily that Samsung placed goods in the stream of commerce with the knowledge that the product will ultimately reach the forum state. *Asahi*, 480 U.S. at 120; *Luv N' care, Ltd.*, 438 F. 3d at 470. Indeed, Samsung's purposeful structuring of its distribution channels cautions against the suggestion that it had knowledge of its lithium-ion batteries being sold in the Texas market to end-users. Without more, mere knowledge that its products are being used in Texas is not enough to impute to Samsung purposeful availment of the forum. *Id.*

### 2. Contacts with Texas Businesses

Ethridge next argues that Samsung's past and present relationships with Texas businesses show its purposeful availment of the Texas market. Dkt. 31 at 4–7. In support, Ethridge points to evidence of Samsung's relationships with the following Texas businesses: eSDI, LLC; Aggreko North America; Xtreme Power; and various vape shops. *Id.* In considering Ethridge's argument, the court will also address Samsung's admitted

---

[2] Samsung's intentional contacts with Texas are discussed in the next section. *See infra* III.A.2.

contacts in Texas with Stanley Black & Decker, Hewlett Packard, and Dell. Dkt. 29 at 2.

### a. eSDI, LLC

Ethridge alleges both that eSDI consigned 39 shipments from Samsung that included the words "lithium[-]ion battery" and that eSDI is a Samsung franchisee that "promotes and sells a wide range of ingraining lithium-ion batteries made by [Samsung], including custom[-]made batteries." Dkt. 31 at 5. Ethridge's evidence for the latter assertion are statements taken from a patent-infringement lawsuit filed in the Western District of Texas against eSDI, Samsung, Samsung America, and Samsung Electronics. Dkt. 31 at 5. The patents at issue involved electrolytes and lithium-ion batteries used in laptops, cellphones, and other devices, with at least one of the patents involving an 18650 battery. *Id.*

 Samsung replies that eSDI was in the supply chain leading to the manufacture of Samsung-authorized products—specifically, the Transacting Distribution Channel where Samsung makes direct bulk sales of battery cells to sophisticated companies found in Asia, Europe, and North America. Dkt. 33 at 6–7. "Every Transacting Company is a sophisticated company involved in either the manufacture of authorized products or the supply chain leading to the manufacture of authorized products." Dkt. 29-1 at 5. Battery cells sold

in this way are ultimately incorporated into battery packs having battery-management systems. *Id.*

Moreover, Samsung notes eSDI is wholly separate and independent from Samsung and that it closed in 2017, two years before Ethridge's injury in 2019. Dkt. 33 at 6. Samsung states that after the sale of the battery cells to a Transacting Company, Samsung does not have the right or ability to control the later use or sale of the battery cells or assembled battery packs. Dkt. 29-1 at 5. As for the patent suit, Samsung argues the allegations are hearsay and not proof of anything, and that the cited portions do not even refer to Texas, let alone accuse Samsung of selling anything in Texas. Dkt. 33 at 7.

Even accepting as true the uncontroverted allegations in the complaint and resolving in the plaintiff's favor any factual conflicts, Ethridge has still not shown that Samsung's relationship with eSDI amounts to purposeful availment of the Texas market. There is no evidence that Samsung "deliver[ed] its products into the stream of commerce with the expectation that they w[ould] be purchased by consumers in the forum State." *World-Wide Volkswagen,* 444 U.S. at 298.[3]

---

[3] "The Supreme Court has stressed that, because due process limits states' judicial authority in order to protect the liberty of non-resident defendants, significant contacts are those that 'the defendant *himself* creates with the forum State.'" *Zoch*, 810 F. App'x. at 289 (quoting *Walden*, 571 U.S. at 284). "Thus, while 'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties,' the 'defendant-

### b. Vape Shops

Next, Ethridge points to exhibits proving the presence of Samsung batteries in vape shops across the state, evincing Samsung's purposeful availment of the Texas market. Dkt. 31 at 6–7. Ethridge names vape shops in Austin, Humble, Spring, and McKinney that advertise on their websites Samsung 25R cells (a type of 18650 battery) for use in e-cigarettes. *Id.*; Dkts. 12-11 to 12-14. Ethridge also argues that if "[he] can identify these entities via simple [G]oogle search, so can Samsung." Dkt. 31 at 6.

Samsung counters that the exhibits are inadmissible and irrelevant, but nevertheless are evidence only of what the retailers decided to sell and not of anything Samsung did, intended, or looked to do. Dkt. 33 at 18.

The court agrees. Like the lithium-ion battery shipments, Ethridge has alleged activity by unaffiliated third parties but has not pleaded any conduct that would plausibly show Samsung purposefully availed itself of the Texas market.[4] The Fifth Circuit has consistently held that "mere foreseeability or awareness" is a constitutionally sufficient basis for personal jurisdiction, but the defendant's product must make its way into the forum state while still in

---

focused "minimum contacts" inquiry' cannot be satisfied by merely demonstrating contacts between the plaintiff or a third party and the forum state." *Id.*

[4] Ethridge makes the same argument with regard to the sale at Texas bike shops of 18650 batteries for electric bikes, but likewise does not show Samsung purposefully availed itself of the Texas market. Dkt. 31 at 7.

the stream of commerce. *Luv N' care, Ltd.*, 438 F.3d at 470. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 417; *see also Richter v. LG Chem, Ltd.*, No. 18-CV-50360, 2020 WL 5878017, at *5 (N.D. Ill. Oct. 2, 2020) (applying the stream-of-commerce test but holding that "[w]here . . . a product reaches a forum state through unplanned and unauthorized backchannels, the defendant cannot be said to have purposefully directed its activities at the forum state").

### c. Xtreme Power/Aggreko North America

Next, Ethridge argues that Samsung's relationships with Xtreme Power and Aggreko North America show purposeful availment. Dkt. 31 at 5–6. Specifically, Ethridge alleges Samsung partnered with Xtreme Power in 2013 to install a battery energy storage system at Reese Technology Center in Lubbock and that Samsung also partnered with Aggreko (formerly Younicos, Inc.) and Duke Energy in 2015 to repower the Notrees Battery Storage Facility in west Texas. *Id.*; Dkts. 12-9; 12-10.

Samsung concedes its conduct with Xtreme and Aggreko plausibly show its purposeful availment of Texas, but argues that Ethridge's injuries do not arise out of or relate to those activities. Dkt. 33 at 8–9. Because

Samsung concedes that purposeful availment is met, the court will consider, *infra* III.B.1., whether the injury "aris[es] out of or [is] related to" Samsung's activity in the forum State. *Helicopteros*, 466 U.S. at 414 n. 8.

### d. Stanley Black & Decker, Hewlett Packard, Dell

After filing its motion to dismiss, Samsung determined it has contacts with Stanley Black & Decker in Texas that it had not previously disclosed. Dkt. 29 at 2. Samsung then notified the court and amended its motion to admit a relationship with Stanley Black & Decker. *Id.* Since January 2019, Samsung has shipped 18650 lithium-ion battery cells through a Transacting Distribution Channel to Stanley Black & Decker's Mission, Texas, power-tools manufacturing facility. Dkt. 29-1 at 5. These shipments, however, occurred after Ethridge purchased his battery from Amazon in 2018. *Id.* at 6. Stanley Black & Decker directly incorporates these battery cells as components in their power-tool battery packs. Samsung maintains it has not marketed, manufactured, or sold these 18650 battery cells to consumers as standalone batteries. *Id.*

Similarly, Samsung admits to long-term agreements with HP and Dell. On infrequent occasions, Samsung has shipped battery packs with 18650 lithium-ion battery cells to HP and Dell to be used as samples or in laptop repairs in their Texas service centers. *Id.* Like the Stanley Black & Decker

shipments, these battery packs are not marketed, manufactured, or sold to Texas consumers as standalone batteries. *Id.*

Because Samsung has plausibly availed itself of the Texas market, the court next considers whether Ethridge's injures arise out of or relate to these activities.

## B. Relatedness

"The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum," otherwise the exercise of specific jurisdiction is prohibited. *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780). The Supreme Court in *Bristol-Myers Squibb* clarified that the "arise out of or relate to" standard requires there be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 137 S. Ct. at 1780 (citing *Goodyear Tires*, 564 U.S. at 919). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781.

The Supreme Court most recently spoke on specific jurisdiction in *Ford Motor Co.*, which involved two consolidated products-liability cases stemming from car accidents in Montana and Minnesota. 141 S. Ct. at 1022–23. Ford moved to dismiss for lack of personal jurisdiction. Though Ford conceded it purposefully availed itself of each forum State by conducting substantial business including "advertising, selling, and servicing the model of vehicle[s]" involved in the suit, it argued the court had specific jurisdiction only "if the company had designed, manufactured, or—most likely—sold in the [respective forum] State the particular vehicle involved in the accident." *Id.* at 1023. In Ford's eyes, "the needed link must be causal in nature: Jurisdiction attaches 'only if the defendant's forum conduct *gave rise* to the plaintiff 's claims.'" *Id.* at 1026.

In rejecting this argument, the Court held that "Ford's causation-only approach finds no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Id.* The Court noted that the relatedness inquiry does not require "a strict causal relationship between the defendant's in-state activity and the litigation." *Id.* Rather, the Court emphasized that in the language of the most common formulation of the rule—"arise out of or relate to the defendant's contacts with the forum"—only "the first half of that standard asks about causation." *Id.* "The back half,

after the 'or,' contemplates that some relations will support jurisdiction without a causal showing." *Id.*

But, the Court added, "[t]hat does not mean anything goes." *Id.* "[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to the forum." *Id.* The question, the Court explained, was whether the defendant "serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027. In serving the market for a product, Ford had targeted Montanans and Minnesotans through billboards, TV and radio spots, print ads, and direct mail enticing them to buy its product; made available for sale, whether new or used, in both states the same model vehicles involved in the accidents at 120 combined dealerships; serviced new and used Ford vehicles through that same network of dealerships; and supplied replacement parts to dealerships and independent auto shops. *Id.* at 1028.

Ford "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in those States." *Id.* Indeed, Ford's activities in targeting the forum States "ma[de] it easier to own a Ford, [thereby] encouraging Montanans and Minnesotans to become lifelong Ford drivers." *Id.* Borrowing a metaphor from a Texas state-court case, *Michelin N.A., Inc. v. De Santiago*, 584 S.W.3d

114 (Tex. App.—El Paso 2018, pet dism'd), Ford employed a "shotgun shell approach to marketing and deliberately aim[ed] a batch of product at multiple states," "expected and wanted the [cars] to hit [the] target," and was successful in hitting its targeted states. *Id.* at 134. Having systematically targeted those states, Ford was not let off the hook "simply because there was an unexpected ricochet along the way." *Id.*

For the Court, the "'relationship among the defendant, the forum[s], and the litigation'—[was] close enough to support specific jurisdiction," where the plaintiffs "allege that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota," even if the plaintiffs' cars made subject of the litigation were not purchased in the forum state. *Ford Motor Co.*, 141 S. Ct. at 1032 (quoting *Walden*, 571 U.S. at 284).

## 1. Applying *Ford Motor Co.*

Ethridge argues there is a "substantial connection between" the defendant's contacts and the "operative facts of the litigation." Dkt. 31 at 21. Samsung argues Ethridge's claims resulting from the purchase of a lithium-ion battery from a third-party retailer do not arise from or relate to Samsung's economic activities in partnering with Xtreme or Aggreko in

Texas, nor from Samsung's contacts with Stanley Black & Decker, HP, or Dell. Dkt. 33 at 8–9.

Ethridge relies on *Ford Motor Co.* and a recent Supreme Court of Texas case, *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1 (Tex. 2021). Dkt. 31 at 21. But the rejection of a strict causation-only approach that those cases stand for does not justify the application of specific jurisdiction where the claims bear only a fleeting relation to the defendant's contacts with the forum State.[5]

Ethridge also leans on *Michelin*, 584 S.W.3d at 134, for the proposition that sale on the secondary market outside the manufacturer's direct control—and that does not adhere to the manufacturer's business priorities—will not defeat specific jurisdiction. Dkt. 31 at 8–9. A closer look at *Michelin*,

---

[5] Texas adheres to the stream-of-commerce-plus test, as detailed in Justice O'Connor's plurality opinion in *Asahi*, which requires "additional conduct" evincing "an intent or purpose to serve the market in the forum State." *Luciano*, 625 S.W.3d at 10, 13. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Texas's long-arm statue allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution. *Frank*, 947 F.3d at 336. The court "therefore inquire[s] whether [the exercise of personal jurisdiction] comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125; *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis."). Because federal courts have no obligation to follow state courts' rulings on *federal* law, the parties' citations to state-court cases are merely persuasive.

however, reveals the "new" vs. "used" distinction was immaterial: "mechanical application of a first sale chokepoint in assessing both stream of commerce and nexus . . . runs contrary to the fact-intensive nature of personal jurisdiction jurisprudence." 584 S.W.3d at 137. *Michelin* is a personal-injury case arising from an alleged tire failure. *Id.* at 119. Central to the *Michelin* court's finding of specific jurisdiction was the defendant's original targeting of the forum State using the so-called shotgun shell approach, which resulted in the sale of the tire in Texas using its customary distribution channels. *Id.* at 137.

Those customary distribution channels included, in the El Paso area alone, 46 authorized dealers in brick-and-mortar stores. *Id.* at 120. The tire's later sale, again in Texas, to another Texas resident "arose from and relate[d] to the tire's initial sale in the state." *Id.* at 137. So the tire that injured the plaintiff first arrived in Texas as a result of Michelin's targeting the Texas market, though by the time it reached the plaintiff it had changed hands "several times." *Id.* But though the evidence shows that Samsung has purposefully availed itself of the Texas market,  Ethridge has not shown—as the plaintiff in *Michelin* showed—that the product that allegedly injured him actually arrived in Texas as a result of the manufacturer's purposeful availment of the Texas market. *Michelin* does Ethridge no good.

Ethridge next relies on *LG Chem America, Inc. v. Morgan*, No. 01-19-00665-CV, 2020 WL 7349483 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, no pet.). In *Morgan*, the court analyzed the question of whether two foreign corporations were susceptible to specific jurisdiction stemming from injuries to the plaintiff by an e-cigarette battery manufactured by LG Chem, Ltd. (LGC), a South Korean Company, and marketed, distributed, and sold by LGC America, a Delaware corporation with its principal place of business in Atlanta, Georgia. *Id.* at *1. LGC argued that it sold its batteries only to "sophisticated manufacturers" and denied that it sold batteries for use in e-cigarettes by individual consumers. *Id.* at *6. LGC contended that "without evidence that it directed the specific battery that allegedly injured [the plaintiff] into Texas, it [was] not subject to jurisdiction in Texas." *Id.* Based on this logic, LGC argued "even if it purposefully directed other, similar batteries into the Texas market, it [was] not subject to jurisdiction in Texas courts for [the plaintiff's] claims." *Id.*

In finding jurisdiction existed over LGC, the court based its decision in part on the plaintiff's "undisputed jurisdictional allegations and evidence show[ing] that LGC designs and manufactures batteries of the type that injured [the plaintiff] for the Texas market, and that it markets, sells, and distributes large quantities of such batteries to customers in Texas." *Id.* at *7.

While LGC denied it designs, manufactures, distributes, advertises, or sells the type of battery that allegedly injured the plaintiff *directly* to individual consumers or authorizes any third party to do so, the court found pertinent that LGC did not deny that it "designed, manufactured, distributed, marketed, or sold [indirectly] the type of battery that allegedly injured [the plaintiff] to Texas customers for at least some applications." *Id.*

The court also explained that while jurisdiction does not generally "exist over a nonresident that merely places a product into the stream of commerce with awareness that the product could end up in a forum state," LGC displayed additional conduct "indicating an intent or purpose to serve the market in the forum state" by "design[ing] and manufact[uring] its lithium-ion 18650 batteries for the Texas market, advertis[ing] them in Texas, and market[ing] them in Texas through a distributor that sold in Texas." *Morgan*, 2020 WL 7349483, at *7. Equally relevant to the court's analysis was LGC's use of LGC America, its wholly owned subsidiary, as its distributor to sell batteries in Texas. *Id.* at *8.

After finding that LGC purposefully availed itself of the privilege of conducting activities in Texas, the court found that the plaintiff's claims "ar[ose] from or relat[ed] to LGC's conduct in designing and marketing its batteries for the Texas market, and marketing, selling, and distributing them

to customers [there]." *Id.* at *11. The court found unpersuasive LGC's argument that it only sold batteries to "sophisticated manufacturers," because LGC did not define the term, explain why an e-cigarette manufacturer was not a "sophisticated manufacturer," or deny that "sophisticated manufacturers" using LGC's batteries in their products would in turn sell their products using LGC's batteries to individual consumers. *Id.*

Samsung responds that Ethridge, unlike the plaintiff in *Morgan*, has not shown that Samsung designed and manufactured its lithium-ion 18650 batteries for the Texas market, advertised them in Texas, or marketed and sold them in Texas through a wholly owned distributor. Dkt. 33 at 6 n.1. Samsung adds that Ethridge's evidence of Samsung shipments into Texas is not only inadmissible and unpersuasive, but also paltry compared to the *Morgan* plaintiff's 2,200 pages of spreadsheets showing many shipments by LGC into the forum State to various Texas companies. *Id.*

Samsung also marshals its own case law, the most relevant being *Richter v. LG Chem, Ltd.*, No. 18-CV-50360, 2020 WL 5878017 (N.D. Ill. Oct. 2, 2020). In *Richter*, the court found it could not exercise personal jurisdiction over LGC because (1) the presence of the battery in Illinois was not the result of purposeful availment by the manufacturer, but rather acts by third parties, and (2) the alleged injury did not arise out of or relate to any

economic activity by the manufacturer in the forum state. *Id.* at *4–6. LGC's contacts with the forum State consisted of sales to two Illinois companies engaged in manufacturing, with the plaintiff supplying no evidence that those companies sold to Illinois consumers or linking those battery shipments to the wholesaler or vape shop that sold the allegedly faulty battery. *Id.* at *2. The court also found pertinent that the plaintiff offered no evidence linking LGC to the middleman-distributor the wholesaler bought its LGC batteries from. *Id.*

This case, like *Richter*, is not a "close" call. *Id.* at *4. Ethridge has failed to show his claims arise from or relate to Samsung's purposefully limited economic activity in Texas. Like *Richter*, there is evidence that Samsung shipped batteries to companies in Texas engaged in the manufacturing or repair of other products, but no evidence that the presence of the offending battery in Texas was the result of purposeful availment by Samsung as opposed to an unauthorized act by third parties. Without more, there is no "substantial connection," *Asahi*, 480 U.S. at 112, between the nonresident defendant's contacts and the "operative facts of the [litigation]." *Rush v. Savchuk*, 444 U.S. 320, 329 (1980).

### C. Fair Play and Substantial Justice

Because the court finds Ethridge has not established that Samsung's contacts with Texas satisfy the requirements of specific jurisdiction, exercising personal jurisdiction over Samsung in this case would run afoul of "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. "[T]he Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.'" *World-Wide Volkswagen*, 444 U.S. at 294 (quoting *Int'l Shoe*, 326 U.S. at 319).

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. at 251, 254).

That is the case here. While Samsung has contacts with the forum State—indeed, it has purposefully availed itself of the privilege of conducting certain, limited activities within Texas—it would offend fair play and substantial justice to hold them to account *in personam* for an injury wholly unrelated to those certain, limited activities.

* * *

For the reasons above, the court grants the defendant's motion. Dkt. 29. Because the court believes granting the plaintiff's request for jurisdictional discovery would be futile, it is denied. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). Ethridge's claims against Samsung are dismissed without prejudice.

Signed on Galveston Island this 26th day of July, 2022.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE